\*RAILROAD  v.  TELEGRAPH  CO.

(*Jackson.*    April  16;  1898.)

1. RIGHT OF WAY.  *For telegraph condemned over railroad's right of way.*

A condemnation of the right of way for a telegraph line over a railroad's right of way, is authorized by Acts 1885, Ch. 135 (Shannon's Code, §§ 1868–1871), conferring the right to take the property or easements of private corporations for public purposes and internal improvement.  (*Post, pp. 64-66.*)

Code construed: §§ 1868–1871 (S.).

Act construed: Acts 1885, Ch. 135.

Act questioned as to its constitutionality: Acts 1885, Ch. 66.

2. MEASURE OF DAMAGES.  *For use of railroad's right of way by telegraph company.*

Only nominal damages can be given to a railroad company for the use by a telegraph line of the space occupied by its posts and wires along the railroad right of way through an agricultural section of the country, when the use and occupation of the right of way for railroad purposes is not interfered with or incumbered in any way.  (*Post, pp. 66-72.*)

Cases cited: 166 U. S., 248; 30 Ohio St., 604.

3. RAILROADS.  *Estate or interest in condemned right of way defined.*

The estate or interest of a railroad company in its right of way acquired by condemnation is thus admirably defined by the court, in the opinion, to wit:  "It does not acquire any estate in fee.  It only acquires an easement or right of way, and this only for railroad purposes.  While its right of way extends to a certain distance upon each side of its track, it has the right to occupy the way beyond its track, cuts, and fills, only to such distance and to such extent as to maintain its track and operate its trains.  It can only go beyond these limits for necessary railroad purposes.  It cannot sell, transfer, incumber, or use its right of way except as necessity and convenience may de-

Railroad *v.* Telegraph Co.

mand for the proper operation of its road. It cannot license the appropriation of any part of such right of way to private business purposes, nor to public purposes, except so far as needful and helpful to the operation of the road itself." (*Post, pp. 67, 68.*)

## FROM GIBSON.

Appeal from the Circuit Court of Gibson County. JOHN R. BOND, J.

DEASON & RANKIN, McCORRY & BOND, and R. P. RAINES for Railroad.

HAYS & BIGGS and J. R. McINTOSH for Telegraph Company.

## FROM MADISON.

Appeal from the Circuit Court of Madison County. LEVI S. WOODS, J.

McCORRY & BOND, CARUTHERS & MALLORY, and DEASON & RANKIN for Railroad.

HAYS & BIGGS and J. R. McINTOSH for the Telegraph Company.

WILKES, J. These two cases involve in the main the same questions, and are heard together by

request of counsel. The actions were brought in
the Circuit Courts of the respective counties of Gib-
son and Madison, by the telegraph company against
the railroad company, to acquire rights of way for tel-
egraph purposes along, upon, and over the right of
way of the railroad company. The petitions in both
cases were demurred to, and demurrer overruled, and
they proceeded to hearing and disposition on the mer-
its and for the assessment of damages, the Madison
County case being heard, on appeal from the report
of the jury of inquiry, before the Judge without a
jury, and the Gibson County case by the Judge
and a jury. In the Madison County case the trial
Judge held that nothing but nominal damages could
be had, and in the Gibson County case the learned
Judge charged the jury that they could give, as
damages, nothing except the value of the land occu-
pied as post holes by the telegraph company.

The cases are before us on appeal by the railroad
company, but the real party in interest is the West-
ern Union Telegraph Co., a competing line, with
which the railroad has a contract for an exclusive
line over its right of way, and which has the right,
under its contract, to use the name of the railroad
company in any suit to resist the attempt of any
competing line to construct any other line upon its
right of way. This contract appears to be based
upon a valuable consideration of services to be ren-
dered.

The first question raised, is that the telegraph

company has no power to have condemned a right of way over the land already condemned for railroad purposes, in the absence of express legislative authority. 3 Elliott on Railroads, Sec. 964. It is conceded that such right is conferred by Ch. 66, Acts 1885, but it is insisted this Act is invalid for constitutional reasons, and that there is no other law conferring such right. The Constitution provides that "no bill shall become a law until it shall have been read and passed on three different days in each house, and shall have received, on its final passage in each house, the assent of a majority of all the members to which that house shall be entitled under this Constitution, and shall have been signed by the respective speakers in open session, the fact of such signing to be noted on the journal."

There is no entry on the house journal showing that the Speaker of the House ever signed this bill. There is no other irregularity or defect alleged against its passage. The journals of each house show that it has passed on three separate readings on three different days in each, and the journal of the senate shows that it was signed by the Speaker of the Senate, and the fact noted on the senate journal, and then it was transmitted to the house for the signature of the Speaker of the House, but there is no entry upon the journal of the house that it was signed by the Speaker of the House. It was approved by the Governor upon the next day thereafter. It is said this defect vitiates the

whole Act, that the provision of the Constitution is
mandatory, and unless complied with, the Act does
not become a law or have any validity. This pre-
sents a question of grave difficulty and doubt, but
if we concede this Act to be invalid, still, in our
opinion, Chapter 135 of the Acts of 1885 (Shan-
non's Compilation, §§ 1868–1871), does not confer
the right to condemn and take the property, privi-
leges, rights, or easements, of private corporations
for public purposes and internal improvements; and
the construction of a telegraph line is a species of
internal improvement, and expressly so regarded and
treated in the other portions of the Act and as em-
braced by it.   Shannon, §§ 1868–1871.

It is said this Act of 1885, Ch. 135, has refer-
ence to the remedy or mode of procedure to condemn
property, and does not confer any right, and that
the right was intended to be conferred by Section
66.   While the Act does prescribe the manner of
proceeding, it also clearly gives the right to take
the privileges, rights, or easements of private cor-
porations in the same manner and to the same ex-
tent as in case of the property of individuals.   Shan-
non, §§ 1860–1871.

This being true, the next question that arises
is as to the measure of damages, and the mode
of ascertaining the same.   In the Madison County
case it was held, as before stated, that the rail-
road company was entitled to only nominal dam-
ages.   In the Gibson County case the Court charged

the jury that the measure of damages was the value of the land taken (and occupied as post holes), but refused to charge that the proper measure of damages was the fair cash market value of said right of way or easement taken, estimated as if the railroad company was willing to sell and the telegraph company desired to buy that particular right of way or easement, and to give the fair cash market value of the right of way or easement taken, without deduction.

The contentions of the parties are thus shown to be that complainant insists that the damages are purely nominal, while the defendant insists, according to the request, that they are the fair cash market value of the right acquired, or easement secured, as if it were a matter of contract between the parties. In its petition, the telegraph company disclaims any right or purpose to obstruct, impede, or interfere with the railroad in its use of its right of way for railroad purposes, and proposes, whenever the railroad company desires to use any part of its right of way, occupied by the telegraph company, for additional side tracks, or other railroad use, to remove its poles and replace them at such other places on its right of way as may be mutually agreed on by the two companies. It proposes to, plant its poles or posts thirty feet from the outside edge of the rail of the track of the railroad, and, upon the side of the track opposite that of the Western Union Telegraph Company's lines.

The interest or estate which a railroad company acquires in land over which its right of way extends, when they are acquired under condemnation proceedings, has been so often defined that it is familiar law. It does not acquire any estate in fee. It only requires an easement or right of way, and this only for railroad purposes. While its right of way extends to a certain distance upon each side of its track, it has no right to occupy the way beyond its track, cuts, and fills, or to such distance and to such extent as to maintain its track and operate its trains. It can only go beyond these limits for necessary railroad purposes. It cannot sell, transfer, incumber or use its right of way except as its necessities and convenience may demand for the proper operation of its road. It cannot license the appropriation of any part of such right of way to private business purposes nor to public purposes except so far as needful and helpful to the operation of the road itself. Jones on Easements, Sec. 383. Its right of way can therefore have no market value, because it cannot be placed upon the market, either at private sale or public outcry. A railroad company is entitled to have a right of way by process of condemnation, because it is a work of internal improvement—a quasi public use. But it has been held that land already taken by the exercise of eminent domain for a public use, and actually used for that purpose, may be taken by legislative authority for other public uses not inconsistent with or

destructive to the former use. Mills on Eminent Domain, Sec. 45, and cases there cited.

It is not insisted in this case that the use of the right of way, and construction of the telegraph line, will be any detriment or obstruction to the railroad, but, on the contrary, it is shown that it would be a benefit and a convenience. A telegraph line along a railroad line is not only a convenience, but a necessity, and is very properly treated as a railroad appurtenance. A railroad company may therefore construct a telegraph line along its right of way, or permit another to do so, but it acquires, and can confer, no exclusive right to do so. *Western Union Tel. Co.* v. *Baltimore R. R.*, 19 Fed. Rep., 660; *Western Union Tel. Co.* v. *American Union Tel. Co.*, 38 Am. Rep., 781; *Western Union Tel. Co.* v. *B. & O. S. W. R. R.*, 11 Fed. Rep., 1; *Pensacola Tel. Co.* v. *Western Union Tel. Co.*, 3 Otto, 124; 3 Am. & Eng. Enc. L. (1st Ed.), pp. 885, 886.

Under this view of the estate and interest which railroad companies have in their right of way, it is difficult to see how the damages sustained by the road can be anything but nominal. We are not now considering the rights of the holders of contiguous lands, who own the fee in the lands over which the railroad has its rights of way. Such rights are in nowise involved in this case, and we make no intimation upon this feature of the matter. Neither is the question raised in these cases about the measure of damages when the railroad spans a large stream

by means of a bridge, and the telegraph company seeks to use the superstructure of the road as a support for its wires and fastenings. Such a condition of affairs is not presented by the record in this case, but we have only the ordinary case of the construction of a telegraph line over the railroad right of way, extending through an agricultural section of the country, when the telegraph company simply desires to plant its posts in the ground, and string its wires overhead along the right of way. Neither are we considering the possible contingency that may arise when it may become necessary or expedient for the railroad company to erect and maintain its own telegraph line for the proper conduct of its railroad business, and when the erection of such line by the railroad may conflict with any other line erected by a third person or company. This is simply a case where the railroad is not using the space occupied by the posts and wires, and when it cannot convey it to another for any purpose, in which case only nominal damages arise.

It is said with much earnestness, and with some degree of plausibility, that it would be unjust to allow a telegraph company to plant its poles· along the right of way, when a railroad company had expended thousands of dollars to clear and keep it free of obstructions, and yet pay nothing for the privilege. But this view is more specious than sound, for the railroad must incur this expense for its own purposes, whether the telegraph line is there or not,

and must keep its right of way clear of obstructions, whether it is occupied by a telegraph line or not, and there is no greater burden or expense because of the presence of a telegraph line.

The learned trial Judge in the Madison County case held: "The measure of damages to the defendant is the amount of decrease in the value of the use of the right of way for railroad purposes when it is jointly used for telegraph purposes." This rule was, no doubt, adopted from the rule laid down by the Supreme Court of the United States in the case of the *C. B. & Q. R. R. Co.* v. *City of Chicago*, 166 U. S., 248. That was a case where the city of Chicago desired to open a street across a portion of the railroad right of way in the city, and instituted condemnation proceedings in the Courts of Illinois. Jury awarded nominal damages of one hundred dollars. The Supreme Court of Illinois affirmed this verdict and judgment. The case was removed to the Supreme Court of the United States. It was attempted to be shown by the railroad company, that, in consequence of opening the street across its right of way, it would be put to an extra expense of erecting gates, maintaining flagmen, and planking the crossing; but this evidence, as well as evidence of the market or salable value of the land was excluded, and the Supreme Court of the United States held that it was not error to exclude such evidence of the salable value of the land, nor the estimated increase in maintaining the roadbed, flagmen, etc.

And the Court laid down the rule, as before stated, as applicable to railroads, though in the same proceedings and by the same jury, full damages were awarded to contiguous landowners for their lands, estimated on their value for all purposes. See, also, *Railway* v. *Railway*, 30 Ohio St., 604; Lewis on Eminent Domain, Secs. 489, 491, 492.

It is said that the statute (Shannon, § 1857) prescribed that the jury shall give the value of the land without deduction. But this has reference to the land of owners which may be used for all purposes. It does not refer to telegraph companies, but by § 1870 (Shannon) it is provided as to these that juries shall not be required to lay off the property, privileges, rights, or easements sought to be condemned, by metes and bounds, and it shall be discretionary with the jury of inquest whether they view the premises or not—a provision which is mandatory in cases of private property taken and condemned. The right of the railroad company being simply to occupy and use the right of way for railroad purposes, it follows that it can suffer only nominal damages when that use and occupation is not interfered with or incumbered in any way.

A question is raised in the Madison County case as to the right of the defendant to have a jury trial on appeal to the Circuit Court on the *quantum* of damages, but in the view we have taken, that the defendant was only entitled to nominal damages, that question is unimportant.

Railroad *v.* Telegraph Co.

In the Gibson County case, damages of $12.50 were assessed upon the wrong basis, but as they are nominal in amount and not complained of, that case will not be reversed for the error, but both are affirmed with costs.