John G. BUHL, Daniel R. Buhl, Regina Winter, James L. Irons and Wife, Bea D. Irons, Kenneth F. York and Wife, Gloria York for Themselves, and All Others Similarly Situated, Plaintiffs–Appellees,

v.

U.S. SPRINT COMMUNICATIONS COMPANY, Defendant–Appellant.

Supreme Court of Tennessee, at Knoxville.

Oct. 26, 1992.

Donald K. Vowell, Knoxville, for plaintiffs-appellees.

John B. Rayson, John T. Buckingham, Knoxville, for defendant-appellant.

## OPINION

REID, Chief Justice.

The primary issue presented on this appeal is whether the installation of a telephone cable within an existing railroad right of way, pursuant to an agreement between the telephone company and the railroad company, is a "taking" under the law of eminent domain, for which the owners of the freehold estates are entitled to compensation. The record supports the judgment of the Court of Appeals reversing the trial court's dismissal of the freeholders' claims against the telephone company. The ancillary issue involving the ownership of the York tract is resolved in favor of the plaintiff York.

The plaintiffs, Buhl, Irons, and York, respectively assert ownership in fee of three tracts of land located in Anderson County upon which are located railroad tracks owned by Southern Railway Company (Southern) and used by Southern as a part of its interstate railway system. Southern's predecessor in title acquired an interest in each of those tracts from plaintiffs' predecessors in title prior to the construction of the railroad in the late 1850's. U.S. Sprint Communications Company (Sprint) is engaged in interstate and foreign communications by wire pursuant to 47 U.S. § 151 *et seq.* It provides to the public various communications services, including domestic long distance telephone services over an all digital fiber optic network. In 1988,

Sprint constructed a fiber optics telephone cable across the plaintiffs' tracts of land, within the boundaries of Southern's right of way and approximately 42 inches below the surface of the ground. The cable, which is less than one inch in diameter, extends across 780 miles of Southern's system, 230 miles of which are in Tennessee. The cable was constructed pursuant to a non-exclusive "license agreement" between Sprint and Southern, whereby Sprint agreed to pay Southern $1,200 per mile per year for the original term of 25 years. The cable is not used by Southern in the operation of its railroad; nor does the cable interfere in any way with the operation of the railroad. A separate conduit to be used by Southern was installed at Southern's expense in the trench with Sprint's cable between Knoxville and Clinton, Tennessee, and between Washington, D.C., and Roanoke, Virginia. The only benefit received by Southern for the installation of the telephone cable is the agreed payments.

Southern was a party defendant to the original suit but was dismissed upon summary judgment and is not a party to this appeal.

Each plaintiff insists the construction of the cable constituted an unlawful taking of an interest in his property for which he is entitled to compensation and damages. Sprint contends it acquired from Southern all the rights necessary for the installation of the cable and, therefore, it has no liability to the plaintiffs.

The trial court held that Sprint's construction of the cable did not constitute a taking for which the plaintiffs are entitled to compensation and granted Sprint's motion for summary judgment. The Court of Appeals reversed, holding that the construction of the cable was not a trespass but was a taking for which plaintiffs Buhl and Irons are due compensation. The Court of Appeals found that plaintiff York's predecessor in title had conveyed the fee simple estate to Southern's predecessor rather than an easement and affirmed the dismissal of York's suit.

Two related issues must be resolved: the nature of the interest owned by Southern in each of the three tracts involved and whether the installation of the cable constitutes a burden on the estates owned by the plaintiffs.

The resolution of the first issue, the interest owned by Southern, is dependent upon the construction of the instruments whereby Southern's predecessor acquired its interest in the respective tracts. The property interest in the York tract was acquired by deed, while interests in the Buhl and Irons tracts were acquired by charter presumption, pursuant to the charter granted to Southern's predecessor by the General Assembly.

Neither the trial court nor the Court of Appeals discussed York's contention that the interest in his tract acquired by the railroad company was an easement rather than the fee. The trial court dismissed the complaints of all three plaintiffs on the ground that they failed to state a cause of action. The Court of Appeals affirmed the dismissal of York's claim, stating only that York's predecessor in title conveyed a fee to the railroad.

■ The pertinent portion of the York deed is as follows:

Know all men by these presents I J M Slaughter of the County of Anderson and State of Tennessee in consideration of the benefits to be derived from the road and the further consideration of fifty dollars to me in hand paid the receipt of which is hereby acknowledged have this day bargained sold transferred and conveyed to the Knoxville and Kentucky Railroad Company forever the right of way and the roadbed and as many feet as may be necessary from the center of said roadbed each way along and through the tract of land on which I now live and where said road has been commenced and I further agree make all the cropway of said road that I may [blank in original] [illegible] free of charge [blank in original] as the same may be surveyed and

located by the engineer of said company to build a railroad from Knoxville in the direction of the Kentucky line but it is hereby distinctly understood and agreed that the event said company does not build said road or does not locate it over the lands aforesaid then this deed to be void and the title to revert to me, my heirs or [illegible]. And it is further understood that the said railroad company shall use occupy and enjoy the aforesaid lands thus conveyed for purposes legitimately connected with the road and for none other whatever. In testimony of all which I have hereto set my hand and seal on this first day of January, 1857.

From this instrument, it appears that the interest conveyed was the "right of way and the roadbed," the metes and bounds of the property conveyed are "as many feet as may be necessary from the center of said roadbed each way along and through the tract of land on which I now live ... as the same may be surveyed;" and the purpose for which the property was to be used was "to build a railroad from Knoxville in the direction of the Kentucky line[,] ... purposes legitimately connected with the road and for none other whatever." It will be noted the instrument contains no habendum clause.

The intention of the grantor with regard to the interest conveyed is not without doubt; consequently, resort will be had to rules of construction. In *Nashville, Chattanooga & St. Louis Railway v. Bell*, 162 Tenn. 661, 39 S.W.2d 1026 (1931), the Court discussed the rules of construction applicable to conveyances to railroad companies. The Court stated:

The estate acquired by the railroad company is to be determined from the intention of the parties gathered from the deed construed in connection with the company's charter, or governing statutes, and, in case of ambiguity, if any, in the light of the circumstances surrounding the execution of the deed. Such is the rule stated in our recent cases of

*Pemberton v. Railway*, 162 Tenn. 65, 34 S.W.(2d) 444, and *Farrar v. Railway*, 162 Tenn. 313, 36 S.W.(2d) 95.

39 S.W.2d at 1027. The Court distinguished between the grant of a right of way and a fee, as follows:

"A 'right of way' in its legal and generally accepted meaning in reference to a railroad company's interest in land is a mere easement for railroad purposes in the lands of others; and therefore, as a general rule, where land obtained by purchase or agreement is conveyed by an instrument which purports to convey a right of way only, it does not convey title to the land itself, but the railroad company acquires a mere easement in the land for right of way purposes, leaving the fee subject to such servitude in the owner." 51 C.J. § 203, p. 539.

.     .     .     .     .

On the other hand:

"A grant or conveyance to a railroad company which has power to acquire by purchase such real estate as may be necessary for the construction and operation of its road, and to take a fee-simple title thereto, will be held to convey a fee-simple title in the land and not a mere easement where such appears to be the intention of the parties as construed from the instrument as a whole, particularly where the conveyance is in the usual form of a general warranty deed, or quitclaim deed, without any words of limitation or restriction and without purporting to convey merely a right of way." 31 C.J. § 202, p. 537.

*Id.*, 39 S.W.2d at 1028. The Court then noted that, in addition to the language of the instrument, the situation of the parties and the size, shape, and location of the tract may reflect the intention of the grantors. In that case, the property was located inside Union City, the boundaries of the ten-acre tract conveyed were precisely described, the property was L-shaped, and, though not noted in the deed, it included the site on which was located the railroad

depot. The Court, finding that the size and shape of the tract rebutted the inference that only an easement was intended, held that the instrument conveyed the fee.

In *Lillard v. Southern Railway,* 206 Tenn. 1, 330 S.W.2d 335, 336 (1959), the Court construed language very similar to that in the instant case, to convey an easement for railroad purposes rather than a fee simple. The instrument of conveyance was a warranty deed with the usual granting, habendum and warranty clauses. The interest conveyed was "[t]he right-of-way for a railroad 200 feet in width, or so much thereof as may be necessary for the construction of said railroad...." The Court held that the language indicated an intention to convey only an easement. The Court stated further, "[t]he phrase 'for railroad right of way' in the granting clause of a deed of land to a railroad cannot be rejected as mere surplusage.'" *Id.,* 330 S.W.2d at 337 (quoting 44 Am.Jur. 316).

In *Smoky Mountain Railroad Co. v. Paine Oil Co.,* 496 S.W.2d 904, 906 (Tenn. Ct.App.1972), the deed granted "... a right of way *variable* in width over, upon and along a certain parcel of land...." The habendum clause was as follows: "To have and to hold said strip of land hereinabove described and hereby conveyed ... forever." *Id.* Again, the issue was whether the deed conveyed an easement for railroad purposes, or the fee simple title. Noting that a conveyance of "a 'right of way' does not convey title, but a mere easement," and that "the 'granting clause' of the deed conveyed only a 'right of way,'" the court found that the deed "clearly expresse[d] an intent to pass an estate or interest less than a fee...." *Id.* at 910, 912. Particularly relevant to the facts of the instant case is the statement by the court in *Smoky Mountain Railroad Co.* that the shape of the tract, a strip of land 2,605 feet long, "is strongly suggestive of a right of way for passage rather than a tract of land for general use." *Id.* at 912.

Sprint relies upon *Baird v. Southern Railway,* 179 Tenn. 366, 166 S.W.2d 617 (1942), in which the Court held the instrument conveyed a fee. However, the language and circumstances of that conveyance are closer to *Nashville, Chattanooga & St. Louis Railway v. Bell, supra,* than to the York deed in this case. In *Baird,* the tract was described precisely, it extended 50 feet on one side of the center line of the roadbed and 150 feet on the other, and was to be used as a depot. The Court held that the circumstances "indicated an intention to convey more than an easement." *Id.,* 166 S.W.2d at 618.

The language of the instrument and the relevant circumstances, particularly the absence of any evidence of an intention to convey more than a right of way, show that York's deed conveyed an easement for railroad purposes only.

■ As stated previously, interests in the Buhl and Irons tracts were acquired by legislative charter. The pertinent language of the charter is as follows:

WHEN RIGHT TO LAND PRESUMED—In the absence of any contract with the company in relation to the lands through which the said road may pass, signed by the owner thereof, or by his agent or any claimant or person in possession thereof, which may be confirmed by the owner, it shall be presumed that the land upon which the railroad may be constructed, together with a space of one hundred feet on each side of the center of said road, has been granted to the company by the owner thereof; and the said company shall have good right and title thereto, and shall have, hold and enjoy the same as long as the same be used only for the purposes of the road and no longer, unless the person or persons owning the said land at the time that part of the road which may be on said land was finished, or those claiming under him, her or them, shall apply for an assessment of the value of said lands as hereinbefore directed, within five years next after that part of said road was finished, and in case the said owner or owners, or those claiming under him,

her or them, shall not apply for such assessment within five years next after the said part was finished, he, she or they shall be forever barred from recovering the said land, or having any assessment or compensation therefor.

1851–52 Acts of Tennessee CCXLIV, p. 385. The significant provisions of this legislative charter are that it created a presumption that the land upon which the railroad was to be constructed and 100 feet on each side of the center of the road had been granted by the owner of the fee, and that the railroad company has the right to use the property granted only "for the purposes of the road." The quoted language, which determined the rights incident to the easement granted, requires definition.

The nature of the interest held by a railroad company under a charter presumption was considered by the Court in *Railway Co. v. Telford's Executors*, 89 Tenn. 293, 14 S.W. 776 (1890). In that case, the issue was whether a charter provision similar to the one in this case granted a fee or an easement. The landowner claimed that his cultivation of a portion of the railroad's right of way was adverse possession. If the grant to the railroad had conveyed the fee, the landowner's claim would have been meritorious, because cultivation of another's property may constitute adverse possession. On the other hand, if the grant had conveyed only an easement for railroad purposes, the landowner would have retained the fee and with it the right to cultivate and otherwise use the property so long as it did not interfere with the operation of the railroad. The Court's rationale and conclusion in *Telford's Executors* was as follows:

> We are of opinion that the grant presumed to have been made by Telford was a grant, not of the fee, but of an easement. The doctrine of eminent domain rests upon the presumed necessity for the taking of private property for a public use. The taking, to be consistent with this theory, must therefore ordinarily be limited to the apparent necessities of the public.... This charter method of condemnation does not expressly condemn the fee, and we think the "grant" presumed and the "title" acquired is a grant of an easement and the title to the easement, and nothing more....
>
> The fee, under this construction, remained with the owner, the railway acquiring a mere easement. The rights of one having an easement in the lands of another are measured and defined by the purpose and character of the easement; and, from this, it follows that the owner of a fee subject to an easement, may rightfully use the land for any purpose not inconsistent with the rights of the owner of the easement.

89 Tenn. at 297–98, 14 S.W. 776 (citations omitted). The Court, quoting a Kansas case, further stated:

> "An easement merely gives to a railroad company a right of way in the land—that is, the right to use the land for its purposes. This includes the right to employ the land taken for the purposes of constructing, maintaining, and operating a railroad thereon. Under this right, the company has the free and perfect use of the surface of the land so far as is necessary for all its purposes, and the right to use as much above and below the surface as may be needed.... The former proprietor of the soil still retains the fee of the land and his right to the land for every purpose not incompatible with the rights of the railroad company. Upon the discontinuance and abandonment of the right of way, the entire and exclusive property and right of enjoyment revest in the proprietor of the soil. After the condemnation and payment of damages, the soil and freehold belong to the owner of the land, subject to the easement or incumbrance, and such land-owner has the right to the use of the condemned property, provided such use does not interfere with the use of the property for railroad purposes."

*Id.* at 298–99, 14 S.W. 776 (quoting *Kansas Central Railway Company v. Allen*, 22

Kan. 285 (1879)). The holding in *Telford's Executors* was that under a charter presumption, the easement for railroad purposes includes only those uses incident to the construction, maintenance, and operation of the railroad upon and across the property encumbered.

■ The question then is whether the telephone cable constructed by Sprint is a use for railroad purposes as defined in *Telford's Executors*. The proof shows that the telephone cable was not constructed for Southern's use and is not used by Southern. Sprint, however, contends the easement for railroad purposes includes the right to allow third parties to use portions of its right of way provided such use is not inconsistent with and does not interfere with the railroad's use of the property. Review of prior decisions by the Court shows this is an incomplete statement of the rule and omits the further limitation which is determinative in this case. Not only must the third party's use be consistent with that of the railroad and not interfere with its use, it must also be "needful and helpful to the operation of the road itself." *Mobile & Ohio Railroad v. Postal Telegraph Co.*, 101 Tenn. 62, 68, 46 S.W. 571 (1898). In *Mobile & Ohio Railroad v. Postal Telegraph Co.*, the telegraph company sued the railroad company to acquire a right of way for the location of a telegraph line over the railroad's right of way, and the railroad company counter sued for damages. The issues were resolved by the Court as follows:

> The interest or estate which a railroad company acquires in land over which its right of way extends, when they are acquired under condemnation proceedings, has been so often defined that it is familiar law. It does not acquire any estate in fee. It only requires [sic] an easement or right of way, and this only for railroad purposes. While its right of way extends to a certain distance upon each side of its track, it has no right to occupy the way beyond its track, cuts, and fills, or to such distance and to such extent as to maintain its track and operate its trains. It can only go beyond these limits for necessary railroad purposes. It cannot sell, transfer, incumber or use its right of way except as its necessities and convenience may demand for the proper operation of its road. It cannot license the appropriation of any part of such right of way to private business purposes nor to public purposes except so far as needful and helpful to the operation of the road itself.

101 Tenn. at 68, 46 S.W. 571. In that case, the Court recognized that a railroad may construct, or allow another to construct, a telegraph line along its right of way provided the line is to be used by the railroad company in the operation of the railroad. It also recognized that a railroad company, owning only an easement for railroad purposes, cannot "license the appropriation" of any part of the right of way for any use, private or public, not related to the construction, maintenance, or operation of the railroad. The Court was careful to distinguish the rights of the owner of the freehold estate subject to the railroad easement and the rights of the railroad company as owner of the easement. The rights of the owner of the fee was not at issue in that case. On this point, the Court stated:

> We are not now considering the rights of the holders of contiguous lands, who own the fee in the lands over which the railroad has its rights of way. Such rights are in nowise involved in this case, and we make no intimation upon this feature of the matter.

*Id.* at 69, 46 S.W. 571.

Sprint relies upon *Grand Trunk Railroad v. Richardson*, 91 U.S. 454, 23 L.Ed. 356 (1875), in which the Court stated:

> [I]t must be admitted that a railroad company has the exclusive control of all the land within the lines of its roadway, ... we are not prepared to assert that it may not license the erection of buildings for its convenience, even though they may be also for the convenience of others.... Such erections would not have

been inconsistent with the purposes for which its charter was granted. And, if the [railroad] Company might have put up the buildings, why might it not license others to do the same thing. . . .

91 U.S. at 468–69, 23 L.Ed. at 361. That holding is not contrary to the decisions of this Court. In *City of Knoxville v. Kaiser*, 161 Tenn. 607, 33 S.W.2d 411 (1930), also relied upon by Sprint, the railroad company leased to Kaiser a lot adjoining its tracks which it owned in fee simple, so that Kaiser could construct thereon a warehouse and cold storage plant. In consideration of the lease, Kaiser agreed to pay a nominal rent and ship all his produce by the railroad. The proof showed that the railroad realized a substantial benefit from Kaiser's business. The issue in *Kaiser* was whether the lease was *ultra vires* or contrary to public policy. In an inverse condemnation suit, the city contended that the railroad had no authority under its charter to lease its property to Kaiser and that, therefore, the lease was void and of no value. The Court found that the main inducement on the part of the railroad was the procuring of freight business and that the contract with Kaiser was "needful and helpful" to the operation of the railroad itself. The Court discussed the essential facts which distinguish *Kaiser* from the case before this Court:

> Counsel for the city cite *Mobile & O. Railroad Co. v. Tel. Cable Co.*, 101 Tenn. at page 68, 46 S.W. 571, 572, 41 L.R.A. 403, for the proposition that a railway company is without power to lease part of its right of way for any stated period of time. Mr. Justice Wilkes in that case was dealing with "the interest or estate which a railroad company acquires in land over which its right of way extends, when they are acquired *under condemnation proceedings*." Without deciding whether or not his comments apply alike to lands acquired by purchase in fee simple, it is to be observed that the limitation he announces of this power to alienate is not absolute, but clearly recognizes exceptions. He says: "It cannot sell,

transfer, incumber or use its right of way, *except as its necessities and convenience may demand*," etc. Again, "It cannot license the appropriation of any part of such right of way to private business purposes, nor to public purposes, *except so far as needful, and helpful to the operation of the road itself*." We italicize significant language. In the case at bar the insistence is that the lease—subject as it was to cancellation upon short notice whenever the requirements of the railroad for its more direct purposes should so demand—was a mutually advantageous one, reasonably calculated to yield additional freight for hauling by the railroad company, thus making remunerative a portion of its lands which otherwise would have been a burden, at least to the extent of the taxes thereon. Indeed, the theory that the lease contravenes public policy in that the consideration for it was, in part, freight shipments, involves recognition that the use of it contracted for was in pursuance of railroad purposes.

33 S.W.2d at 412–13. In both *Grand Trunk Railroad* and *Kaiser* the use of the appurtenance was found to be "needful and helpful to the operation of the road itself," even though it was beneficial to others also. The critical fact is not who constructs the appurtenance nor even the function of the appurtenance constructed. The critical requirement is that the appurtenance be used in connection with the operation of the railroad upon and across the encumbered property.

■ The conclusion is that since the telephone cable installed by Sprint is not used by Southern in the construction, maintenance, or operation of its railroad upon and across the encumbered property, its construction constituted the taking of an interest in plaintiffs' respective tracts within the meaning of the law of eminent domain. The cases heretofore discussed recognize that T.C.A. § 65–21–201 *et seq.* (Public Acts of 1885, Chapter 66) authorize telegraph

and telephone companies to install their lines upon property encumbered by railroad rights of way. In *Mobile & Ohio Railroad v. Postal Telegraph Co.*, 101 Tenn. 62, 46 S.W. 571 (1898), the Court acknowledged the concession by the parties that Chapter 66 of the Public Acts of 1885 conferred upon telegraph and telephone companies the "power to have condemned a right of way over land already condemned for railroad purposes...." *Id.* at 65, 46 S.W. at 571 (the contention in that case was that the Act was not properly enacted and was, therefore, unconstitutional. *See also Home Telephone Co. v. People's Telephone & Telegraph Co.*, 125 Tenn. 270, 141 S.W. 845 (1911)). This authority was also recognized in *Western Union Telegraph Co. v. Nashville, Chattanooga & St. Louis Railway*, 133 Tenn. 691, 182 S.W. 254, 258 (1916), and the same case again on appeal, *Western Union Telegraph Co. v. Nashville, Chattanooga & St. Louis Railway*, 145 Tenn. 85, 237 S.W. 64, *cert. denied*, 258 U.S. 626, 42 S.Ct. 382, 66 L.Ed. 798 (1921). *See also Doty v. American Telephone & Telegraph Co.*, 123 Tenn. 329, 130 S.W. 1053 (1910).

The right of the owner of the freehold estate subject to an easement for railroad purposes to be compensated has been considered by the Court. The Court recognized in *Western Union Telegraph Co. v. Nashville, Chattanooga & St. Louis Railway*, 145 Tenn. 85, 237 S.W. 64 (1921), a case in which a commercial telegraph company instituted condemnation proceedings against a railroad company to locate its poles and lines along the railroad company's right of way, that the owner of the freehold estate has the right to be compensated. In that case, the Court held:

> It is almost everywhere held that the erection of a line of telegraph over the right of way of a railroad company, not to be used in the operation of the railroad, but for purely commercial purposes, imposes an additional burden on the fee, and the landowner is entitled to additional compensation from the telegraph company.

In other words, a railroad company has no such title to its right of way as authorizes it to permit the erection thereupon of a commercial telegraph line, altogether disconnected from railroad operation, for commercial purposes. Therefore, to value a railroad's right to lease a right of way along its right of way to a telegraph company for such purposes would be to value something that the railroad company did not have, and which could not possibly be taken from it.

237 S.W. at 65 (citations omitted).

In *Lea v. Louisville & Nashville Railroad*, 135 Tenn. 560, 188 S.W. 215 (1916), the plaintiff landowners sought an injunction restraining the defendant railroad from laying a water pipeline on the right of way owned by a third party, the county. The plaintiffs were the owners of the fee in property in which the county had an easement for a road. The county had given permission to the railroad to install a pipeline across property that was subject to the county's easement. The trial court found the installation of the pipeline constituted an additional servitude upon, and a taking of, the property of the owners of the fee. The trial court also determined that the rights of the owners of the fee were not affected by the county's grant of permission, as the holder of the easement, to the railroad. 188 S.W. at 217. This Court affirmed, observing:

> The general rule (deducible from the cases) seems to be that any destruction, restriction, or interruption of the common and necessary use and enjoyment of the property in a lawful manner may constitute a taking. It is not necessary that the owner be wholly deprived of the use of his property. The term "taking" should not be limited to the absolute conversion of property, nor is it material whether the property is removed from the possession of the owner, or in any respect changes hands. It is not necessary that the possession be an actual physical taking. To constitute a taking the power of disposal need not be inter-

fered with. The entire or any partial destruction of private property [is a taking].

*Id.*, 188 S.W. at 219. The court held that the installation of the pipeline constituted a taking, entitling the owners of the fee to relief. *Id.*

The foregoing authorities require the conclusion that the installation of the telephone cable without the consent of the owners of the fee constituted the taking of an interest in the property for which they are entitled to compensation and such other rights as provided by law.

The case is remanded to the trial court for further proceedings not inconsistent with this Opinion.

Costs are taxed against Sprint.

DROWOTA, O'BRIEN and ANDERSON, JJ., concur.

DAUGHTREY, J., not participating.