IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 31, 2018 Session

## KT GROUP, LLC v. ROBERT LOWE ET AL.

**Appeal from the Chancery Court for Scott County**
**No. 10-707   Elizabeth C. Asbury, Chancellor**

_____

### No. E2017-02415-COA-R3-CV

_____

This case involves a property dispute regarding a fifty-foot strip of land that was historically used for railroad purposes. KT Group, LLC (plaintiff) filed an action to quiet title, naming Robert Lowe and his wife, Velma Lowe, as defendants. Each side claims to own the strip of land in fee simple absolute. The trial court determined that plaintiff owned the land in fee simple. Defendants appealed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Terry M. Basista, Jacksboro, Tennessee, for the appellants, Robert Lowe and Velma Lowe.

C. Patrick Sexton, Oneida, Tennessee, for the appellees, KT Group, LLC.

**OPINION**

**I.**

The material facts of this case are not in dispute. In July 2015, plaintiff acquired by quitclaim deed a strip of land in Scott County that is approximately 12.63 miles long and fifty feet wide. Although the parties refer to this strip of land as "the Brimstone Railway Line," the property has not been used for railroad purposes for many years.[1]

---

[1] Mrs. Lowe testified that the last time she remembered a train running on the tracks was about forty-three years ago. Mr. King, one of the owners of KT Group, LLC, estimated that the subject property had not been used for fifteen to twenty years.

Shortly after acquiring the property, plaintiff began removing rails and crossties from the rail line. Plaintiff also entered into contracts to sell the gravel from the existing roadbed.

In September 2015, defendants erected barriers that prevented plaintiff from accessing the portion of the rail line running across their property. Defendants also sent plaintiff a letter claiming fee simple ownership of the portion of the rail line running across their property. In response, plaintiff initiated this action to quiet title. In addition to seeking a declaration of ownership, plaintiff sought damages incurred as a result of defendants' interference with plaintiff's use of the property. Defendants filed an answer denying that plaintiff had any rights in the property.[2]

At trial, both parties presented expert testimony from title attorneys. Both experts traced the chain of title back to a 1921 deed. The parties stipulated that the court's construction of that deed would determine their respective interests in the property. For the sake of clarity, we quote the relevant portions of the 1921 deed and emphasize the language important to this case:

> For and in consideration of Ten ($10.00) Dollars cash in hand paid, and other considerations not necessary here to mention, we, [grantors] of Scott County, Tennessee, **have bargained and sold, and by [sic] hereby transfer and convey**, unto Round Mountain Lumber & Coal Company . . . **a tract or strip of land fifty (50) feet wide** through three tracts of land in what was formerly the 14th Civil District of Scott County, Tennessee . . . ; **the said fifty (50) feet strip** being more particularly described as follows: to wit:
>
> Twenty-five feet on each side of a line beginning in the boundary line between our land and the land of Wesley Parsons, and in the center of the said Round Mountain Lumber & Coal Company's **right of way**, and running thence substantially with the Holt Survey as now staked out across our property to the center of the said Round Mountain Lumber & Coal Company's **right of way** on the Cleveland Potter line; the above being across one of our tracts[.]
>
> And then beginning in the center of the said Round Mountain Lumber & Coal Company's **right of way** where it leaves the Cleveland Pott[e]r line; and running with the Holt Survey

---

[2] Defendants also asserted a counterclaim against plaintiff for "the profits realized as a result of the sale of the steel rails and also for the damages to Defendants' property and for punitive damages with respect thereto." Later, however, defendants voluntarily withdrew their counterclaim.

across another of the above tracts to the center of the said **right of way** where it enters one of the Mand[y] Newport tracts; Then beginning in the center of said **right of way** where it leaves the first Mandy Newport tract; and running substantially with the said Holt Survey across the third tract to the center of the said **right of way** where it enters the second Mandy Newport tract; **the said strip of land to be used for Railroad purposes.**

The final location of the v[e]ndee or its assigns shall definitely fix and determine the description of **the 50 foot strip hereby conveyed**; provided, however, that any such permanent location shall be substantially in accordance with the present survey.

To have and to hold the **said strip, tract or parcel of land**, together with the appurtenances, estate, right, title and interest thereunto belonging, unto the said Round Mountain Lumber & Coal Company, its successors and assigns, **in fee simple forever**.

We covenant that we are lawfully seized and possessed of the said property, have a good right to convey it, and that it is un[e]ncumbered; and we warrant to forever defend the title thereto unto the said vendee, its successors and assigns, against the lawful claims of all persons whomsoever.

(Bold print added.)

Plaintiff's expert witness testified his professional opinion was that the 1921 deed conveyed fee simple ownership of the strip of land to Round Mountain Lumber & Coal Company (Round Mountain). Defendants' expert witness, however, testified that the deed merely granted Round Mountain an easement to use the strip of land for railroad purposes. Furthermore, defendants' expert testified that once the land was "abandoned for railroad purposes, then that interest was extinguished and completely vested back in the [defendants]." Ultimately, the trial court found that the 1921 deed conveyed the strip of land to Round Mountain in fee simple. Accordingly, the court held that plaintiff, as Round Mountain's successor in interest, also held the property in fee simple. The court did not rule on plaintiff's request for damages. Defendants appeal.

## II.

The sole issue on appeal is whether the trial court erred in determining that

plaintiff holds the disputed property in fee simple. Because plaintiff did not challenge the trial court's failure to rule on its request for damages, plaintiff waived that issue on appeal. *See* **Lapinsky v. Cook**, 536 S.W.3d 425, 439 n.2 (Tenn. Ct. App. 2016).

## III.

Resolution of the ultimate issue in this case requires us to consider whether the trial court erred in its interpretation of the 1921 deed. The interpretation of a deed is a question of law, which we review de novo without a presumption being accorded to the correctness of the trial court's legal conclusion. **Griffis v. Davidson Cty. Metro. Gov't**, 164 S.W.3d 267, 274 (Tenn. 2005).

In Tennessee, there is a statutory presumption that a deed passes the entirety of the grantor's interest in the property absent evidence of a contrary intent. Specifically, Tenn. Code Ann. § 66-5-101 (2015) provides that

> [e]very grant or devise of real estate, or any interest therein, shall pass all the estate or interest of the grantor or devisor, unless the intent to pass a less estate or interest shall appear by express terms, or be necessarily implied in the terms of the instrument.

As the Supreme Court has explained,

> The purpose of [the predecessor statute of Tenn. Code Ann. § 66-5-101] was to abolish the common law rule requiring words of inheritance as an indispensable prerequisite to the creation of an absolute estate in fee simple. And since the enactment of these statutes, the courts look to the whole instrument, without reference to formal common law divisions of deeds and common law rules of construction in order to ascertain the intention of the parties, and will not allow technical rules to override the intent.

**Pickens v. Daugherty**, 397 S.W.2d 815, 819 (Tenn. 1965) (citations omitted).

Thus, "[i]n construing a deed, a court's primary goal 'is to ascertain the grantor's intent from the words of the deed as a whole and from the surrounding circumstances.' " **Bryant v. Bryant**, 522 S.W.3d 392, 412 (Tenn. 2017) (quoting **Griffis**, 164 S.W.3d at 274). However, "where the deed is so confused and contradictory in its wording, and where the surrounding circumstances held no light upon the intent of the grantor, then the courts must, as a last resort, rely upon the common law rule which places precedence upon the premises [granting clause] over the habendum clause." **Bennett v. Langham**,

383 S.W.2d 16, 20 (Tenn. 1964) (emphasis added); *see also* **Hall v. Hall**, 604 S.W.2d 851, 854 (Tenn. 1980) (noting that the Supreme Court has "not totally abandon[ed] this rule of construction . . . .").[3]

## IV.

We begin with the statutory presumption that the 1921 deed conveyed to Round Mountain the entirety of the grantors' interest in the property (in this case, a fee simple). *See* Tenn. Code Ann. § 66-5-101. Defendants attempt to rebut that presumption by arguing that the deed's express terms demonstrate an intention to grant a mere easement for railroad purposes. In support of their argument, defendants point out that the deed's descriptive clause uses the phrase "right of way" six times. They also observe that the descriptive clause concludes with the statement: "the said strip of land to be used for Railroad purposes."

Plaintiff, on the other hand, emphasizes the language appearing in the granting clause and the habendum clause of the deed. The granting clause states that the grantors "have bargained and sold, and by [sic] hereby transfer and convey . . . a tract or strip of land fifty (50) feet wide . . . ." There are no accompanying words of limitation. At the end of the granting clause, the deed states: "the said fifty (50) feet strip being more particularly described as follows . . . ." Here, too, there are no accompanying words of limitation. The habendum clause, which follows the descriptive clause, gives Round Mountain and "its successors and assigns" the right "[t]o have and to hold the said strip, tract or parcel of land, together with the appurtenances, estate, right, title and interest thereunto belonging . . . in fee simple forever."

As previously stated, "[i]n construing a deed, a court's primary goal 'is to ascertain the grantor's intent from the words of the deed as a whole and from the surrounding circumstances.' " **Bryant v. Bryant**, 522 S.W.3d 392, 412 (Tenn. 2017) (quoting **Griffis v. Davidson Cty. Metro. Gov't**, 164 S.W.3d 267, 274 (Tenn. 2005)). In the present case, all parties to the original deed are deceased and no evidence was introduced regarding the "surrounding circumstances" of the original conveyance.[4] Therefore, we must attempt to ascertain the grantors' intent solely based on the language

---

[3] In this case, the granting clause and the habendum clause of the deed are not in conflict; therefore, it is unnecessary to resort to this common law rule.

[4] Defendants' expert witness speculated that the strip of land could have been conveyed to Round Mountain "for the purpose of extracting timber," a right which may have been extinguished once the resources were exhausted. That conclusion, however, is pure speculation; nothing in the terms of the deed suggests such an intended purpose. Defendants also ask us to consider the fact that the deed to their own property states that they hold their land "[s]ubject to the existing Brimstone Railroad R/W." Because defendants did not receive their deed until years after the execution of the 1921 deed, we do not think that language is relevant to the "surrounding circumstances" of the original conveyance.

of the deed.

Because the granting clause and the habendum clause both contain language that is suggestive of a conveyance in fee simple, the meaning of the phrase "right of way" in the descriptive clause becomes critically important. Unfortunately, the phrase "right of way" has historically carried two different meanings:

> the term "right-of-way" is sometimes "used to describe a right belonging to a party to pass over land of another, but it is also used to describe that strip of land upon which railroad companies construct their road bed [sic],[5] and, when so used, the term refers to the land itself, not the right of passage over it."

(Footnote added.)

Danaya C. Wright & Jeffery M. Hester, *Pipes, Wires, and Bicycles: Rails-to-Trails, Utility Licenses, and the Shifting Scope of Railroad Easements from the Nineteenth to the Twenty-First Centuries*, 27 Ecology L.Q. 351, 391 n.155 (2000) (quoting Black's Law Dictionary 1489 (4th ed. 1968)). In fact, "[j]udges, scholars and commentators have since cited the term's dual meaning as the leading cause of ambiguity and litigation in railroad property cases." *Id.* Even the U.S. Supreme Court has acknowledged the two different meanings of the phrase. *See* **Joy v. City of St. Louis**, 138 U.S. 1, 44 (1891) (quoting with approval a trial court's observation that the term "sometimes is used to describe a right belonging to a party, a right of passage over any tract; and it is also used to describe that strip of land which railroad companies take upon which to construct their road-bed [sic].").

When a deed "purports to *convey* a right of way only" our courts generally construe the deed as conveying "a mere easement in the land for right of way purposes, leaving the fee subject to such servitude in the owner." **Buhl v. U.S. Sprint Commc'ns Co.**, 840 S.W.2d at 907 (Tenn. 1992) (emphasis added). However, we have not identified a single Tennessee case that has interpreted the term "right of way" when it appears only in the *descriptive clause* of a deed to a railroad; nor have the parties made us aware of any such cases. According to two legal scholars, the term "right of way"

> most often arises in the habendum or descriptive clauses of a deed when references are made to the entire corridor or roadbed . . . . This sense of the term is also common in fee simple deeds that use the existing corridor as a spatial

---

[5] The dictionary shows "roadbed" as one word. *See* Webster's II New Riverside University Dictionary 1014 (Anne H. Soukhanov ed., 1994).

> reference (for example, "convey and warrant a strip of land, fifty feet on each side of the XYZ right-of-way") or use it to describe the actual land conveyed in the deed (as in "convey and warrant the following real estate:  the right-of-way fifty feet wide").

Wright & Hester, 27 Ecology L.Q. at 393 (citing ***Faus v. City of L.A.***, 431 P.2d 849, 854 (Cal. 1967) (reference to fencing the right-of-way); ***Bouche v. Wagner***, 293 P.2d 203, 207-09 (Or. 1956) (reference to a grade crossing over the right-of-way); ***Cruzan v. Missouri-Kansas-Texas R.R. Co.***, 303 P.2d 313, 314 (Okla. 1956) (conveying land identified by reference to "the outer lines of the right-of-way"); ***Johnson v. Valdosta, Moultive & W. R.R. Co.***, 150 S.E. 845, 846-47 (Ga. 1929) (conveying a "strip of land sixty feet wide for a railroad right of way")).

Reading the 1921 deed as a whole, we think the use of the phrase "right of way" in the descriptive clause was merely intended *to describe* (rather than to limit the use of) the railroad corridor conveyed in the granting clause.  Like some of the cases cited above, the 1921 deed mostly refers to Round Mountain's "right of way" in the context of providing a spatial reference.  The description begins by stating that the rail line will begin on the boundary between the grantors' land and the land of Wesley Parsons, "and in the center of the said [Round Mountain's] right of way, and running thence substantially with the Holt Survey as now staked out across our property . . . ."  As the description traces the line across various tracts of land, the deed repeatedly states that the property runs from "the center of the said right of way" along the path marked by the "Holt Survey."  These appear to be spatial references rather than limitations on the use of the railroad's land.  This reading gives full effect to all provisions of the deed and thus does not render any language superfluous.

Defendants acknowledge that some language in the deed, particularly the habendum clause, seems to indicate the conveyance of a fee simple interest.  They insist, however, that our decision in ***Smoky Mountain Railroad Company v. Paine Oil Company***, 496 S.W.2d 904 (Tenn. Ct. App. 1972) mandates a ruling in their favor.  Because defendants' argument rests almost entirely on our decision in ***Smoky Mountain***, we will carefully examine the facts and holding of that case.

***Smoky Mountain*** involved the issue of whether a railroad company owned a strip of land in fee simple or merely held an easement to use the land for railroad purposes. 496 S.W.2d at 907.  The chain of title in that case was traced back to a deed executed in 1910.[6]  *Id.* at 905.  The granting clause of that deed stated that the grantor does "*hereby grant, bargain, sell and convey* unto the said [grantee], his successors and assigns, *a right*

---

[6] In restating the relevant portions of the ***Smoky Mountain*** deed, we emphasize the language critical to the case at bar.

*of way* [v]ariable in width over, upon and along a certain parcel of land lying in 5th District of Sevier County, Tennessee . . . ." *Id.* at 906 (emphasis added). The descriptive clause referred to the property as a "right of way" three times. *Id.* The deed also stated that the property was "conveyed for any and all railroad purposes whatever and for all uses incident to the construction and operation of a railroad." *Id.* Finally, the deed concluded with the following habendum clause and accompanying covenants:

> *TO HAVE AND TO HOLD said strip of land* hereinabove described and hereby conveyed unto said [grantee], his successors or assigns *forever*.
>
> And the [grantor] hereby covenant[s] with the said [grantee], his successors or assigns, that He is lawfully seized *in fee simple* of the premises above conveyed, *and ha[s] full power, authority and right to convey the same*, and that said premises are free from all encumbrances, and that He will forever warrant and defend said premises and the title thereto against the lawful claims of all persons whomsoever.

*Id.* (capitalization in original).

The ***Smoky Mountain*** Court acknowledged the tension between the granting and habendum clauses. Although the granting clause purported to convey "a right of way," the habendum clause merely referred to the "said strip of land." *Id.* The habendum clause was also followed by a covenant that the grantor "is lawfully seized *in fee simple* . . . and ha[s] the full power, authority and right to convey the same[.]" *Id.* Ultimately, the Court determined that the statutory presumption did not apply because the deed "clearly expresses an intent to pass an estate or interest less than a fee . . . ." *Id.* at 912. In reaching that conclusion, the Court emphasized that the granting clause of the deed purported to convey "a right of way." *Id.* That language, the Court concluded, "cannot be rejected as mere surplusage." *Id.*

The case at bar is readily distinguishable from ***Smoky Mountain***. As previously stated, the ***Smoky Mountain*** Court found that the statutory presumption did not apply because the language of the granting clause expressly conveyed a "right of way" rather than "land." *Id.* The Court went on to hold that fee simple language in the habendum clause cannot override such a clear expression of the grantor's intent in the granting clause. *Id.* Here, however, the granting clause and habendum clause are in agreement; both purport to grant a tract or strip of "land" in fee simple. The only reference to a "right of way" appears in the descriptive clause. It is far less clear whether the grantors in the present case intended the phrase "right of way" to convey less than their entire estate. As we explained above, it is more likely that the phrase is simply shorthand for the strip of land conveyed in the granting clause.

Notably, the ***Smoky Mountain*** Court took great pains to distinguish the facts of that case from the facts of ***Nashville, Chattanooga & St. Louis Railway v. Bell***, 39 S.W.2d 1026 (Tenn. 1931). ***Smoky Mountain***, 496 S.W.2d at 908-10. In ***Bell***, the Supreme Court held that a deed conveyed property to a railroad company in fee simple. 39 S.W.2d at 1029. The granting clause of the deed purported to convey a "tract parcel or piece of land" rather than a mere right of way. ***Id.*** at 1027. In fact, the only language which could possibly be interpreted as conveying an easement appeared in the habendum clause, which stated that the "said land" was "to be forever used enjoyed by the said company for Rail Road purposes only and not to be sold by said company or leased to any party for any purpose in whole or in part without the consent of the [grantor] or his legal heirs or representatives." ***Id.*** The ***Bell*** Court concluded that "[t]he phrase 'for railroad purposes only' was merely a declaration of the purpose for which the land was intended to be used, and did not limit the estate conveyed." ***Id.*** at 1028. It further held that "[t]he words of the deed, situation of the parties, the size, shape, and location of the tract of land conveyed, excludes the inference that the grantor intended to convey merely a right of way or merely an easement." ***Id.***

The ***Smoky Mountain*** Court rightly concluded that ***Bell*** was not controlling in the case then before the Court. "In [***Bell***], the granting clause purported to convey an absolute title which the 'habendum clause' attempted to limit. In [***Smoky Mountain***], the 'granting clause' purports to convey only a right of way which the 'habendum clause' attempts to enlarge into a strip of land." ***Smoky Mountain***, 496 S.W.2d at 910. The Court also observed the difference in the size and shape of the land conveyed in both cases. ***Id.*** at 912. In ***Bell***, the land conveyed was ten acres, "L"-shaped, and positioned in the middle of a five thousand acre tract, which would become Union City. 39 S.W.2d at 1027. In ***Smoky Mountain***, the right of way was 2,605 feet in length and fifty feet in width except for the eastern portion where it was 100 feet in width. ***Smoky Mountain***, 496 S.W.2d at 912. The ***Smoky Mountain*** Court concluded that this shape was "strongly suggestive of a right of way for passage rather than a tract of land for general use." ***Id.***

It is true that the size and shape of the land at issue in this case more closely resembles the narrow strip of land at issue in ***Smoky Mountain***. However, our holding in ***Smoky Mountain*** *primarily* rested on the conclusion that the deed contained language that expressed a clear intention to convey less than the grantor's entire estate. That is why the ***Smoky Mountain*** Court spent so much time distinguishing the granting clause of the deed in that case from the granting clause of the deed in ***Bell***. Importantly, the granting clause of the deed in the present case is more similar to the granting clause in ***Bell***. It consists of an unequivocal, unqualified grant of "land" rather than a grant of a "right of way." Further, as the ***Bell*** Court explained, a reference to land being used for "Railroad purposes" can be interpreted as a declaration of the parties' expectations rather than a formal limit on the grantee's use of the land. 39 S.W.2d at 1028.

Our holding in this case is consistent with the holdings of other railroad-related cases in this state. We have identified several cases in which the Supreme Court has been asked to decide whether a deed granted a railroad an easement or conveyed land in fee simple. *E.g.*, ***Buhl v. U.S. Sprint Commc'ns Co.***, 840 S.W.2d 904 (Tenn. 1992); ***Lillard v. Southern Ry. Co.***, 330 S.W.2d 335 (Tenn. 1959); ***Baird v. Southern Ry.***, 166 S.W.2d 617 (Tenn. 1942); ***Nashville, Chattanooga & St. Louis Ry. v. Bell***, 39 S.W.2d 1026 (Tenn. 1931); ***Pemberton v. Southern Ry. Co.***, 34 S.W.2d 444 (Tenn. 1931). In three of those cases, the Supreme Court held that the deed conveyed land in fee simple. ***Baird***, 166 S.W.2d at 618; ***Bell***, 39 S.W.2d at 1028; ***Pemberton***, 34 S.W.2d at 445. Significantly, in the two cases where the Court held that the deed only granted an easement, the granting clause specifically purported to convey "a right of way." ***Buhl***, 840 S.W.2d 904; ***Lillard***, 330 S.W.2d 335. In ***Lillard***, the Court even emphasized the fact that "no attempt was made in the granting clause to convey *the land* but only conveyed the *right of way*." 330 S.W.2d at 337 (emphasis added).

The Court of Appeals has had additional opportunities to address this issue.[7] *E.g.*, ***Noble v. Sorenson***, No. 88-24-II, 1988 WL 60482 (Tenn. Ct. App. 1988); ***Smoky Mountain v. Paine Oil Co.***, 496 S.W.2d 904 (Tenn. Ct. App. 1972); ***Southern Ry. Co. v. Griffitts***, 304 S.W.2d 508 (Tenn. Ct. App. 1957). In each of these cases, this Court determined that a deed granted a railroad an easement to use land for railroad purposes. In both ***Smoky Mountain*** and ***Noble***, the granting clause purported to convey a "right of way." The ***Noble*** Court specifically distinguished ***Bell*** and ***Baird*** by observing that they "conveyed land, not simply a right-of-way." ***Noble***, 1988 WL 60482, at *2. In ***Griffitts***, the granting clause conveyed a "strip of land" but the court concluded that other language in the deed (as well as its size and shape) clearly expressed an intention to convey less than a fee simple. 304 S.W.2d at 497-98. For example, the deed gave the grantee "the right to borrow from and dump upon the same dirt and rock; and the said party of the second part is given full power to sell, lease, assign or mortgage the leasement [sic] herein conveyed." *Id.* at 497. The Court noted that the grantee

> would need no authority to do either if it acquired the fee. And the term 'assign' seems inappropriate to a fee title, as does the term 'leasement' which either means a leasehold or an easement and neither is descriptive of an estate in fee.
>
> Construing the instrument as a whole and considering the size and shape of the land we think it is apparent that the intent

---

[7] For the sake of brevity, we only cite this Court's more recent decisions. We have also omitted discussion of cases that primarily involve the interpretation of a railroad's *charter* in the absence of a contract or deed purporting to convey land in fee simple. *See, e.g.*, ***Meals v. Lucas***, No. 02A01-9404-CH-00085, 1995 WL 318467 (Tenn. Ct. App. 1995); ***Melton v. Tims***, No. 02A01-9102-CH-00018, 1991 WL 165194 (Tenn. Ct. App. 1991); ***Nashville, Chattanooga & St. Louis Ry. v. McReynolds***, 48 S.W. 258 (Ct. Ch. App. 1898).

and purpose of the instrument was to grant only an easement
for railway purposes.

*Id.* at 498.

Thus, a survey of Tennessee case law reveals a strong preference for construing deeds to railroad companies as conveying land in fee simple *when the granting clause purports to convey "land" and there are no apparent limitations on the grant*. On the other hand, our courts typically construe deeds to railroad companies as granting easements when the granting clause expressly grants a "right of way" or where the language of the deed, the circumstances of the parties, and the size and shape of the land raise the necessary inference that the grant of an easement was intended. This approach is, of course, consistent with the statutory presumption that a grantor conveys his entire interest in the property absent clear evidence of a contrary intent.

For the foregoing reasons, we hold as a matter of law that the trial court did not err in concluding that the 1921 deed conveyed the strip of land to Round Mountain in fee simple. Because the parties agree that plaintiff is Round Mountain's successor in interest, the trial court correctly determined that plaintiff now owns the strip of land in fee simple.[8]

## V.

The judgment of the trial court is affirmed. The costs on appeal are assessed to the appellants, Robert Lowe and Velma Lowe. The case is remanded, pursuant to applicable law, for collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE

---

[8] Because we hold that the 1921 deed did not grant a mere easement to Round Mountain, it is unnecessary for us to decide whether and when the land was "abandoned" for railroad purposes.

- 11 -