**Daffney A. THOMAS, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**James M. Crews, Jr., et al., Plaintiffs,**

v.

**The United States, Defendant.**

**Nos. 10–54L, 10–459L.**

United States Court of Federal Claims.

Aug. 29, 2012.

---

Steven M. Wald, St. Louis, MO, for the Thomas plaintiffs. Brent W. Baldwin and J. Robert Sears, St. Louis, MO, and Thomas S. Stewart and Elizabeth G. McCulley, Kansas City, MO, of counsel.

Irma Merrill Stratton, Memphis, TN, for the Crews plaintiffs.

Lary Cook Larson, United States Department of Justice, Washington, DC, for defendant, with whom was Ignacia S. Moreno, Assistant Attorney General.

## OPINION AND ORDER

FIRESTONE, Judge.

In this "Rails–to–Trails" case, plaintiffs allege that they own property in Shelby Coun-

ty, Tennessee, through which CSX Transportation, Inc. and its predecessors ran a railroad right-of-way. Plaintiffs claim that the defendant ("the government") affected a taking of their reversionary property interests in the railroad right-of-way when the government approved the conversion of the subject rail line to a recreational trail pursuant to the "railbanking" provision of the National Trails System Act Amendments of 1983, 16 U.S.C. § 1247(d) (2006) ("Trails Act"). Plaintiffs are now seeking just compensation under the Takings Clause of the Fifth Amendment for the alleged taking associated with the government's actions under the Trails Act.

Pending before the court are the parties' cross-motions for partial summary judgment as to the respective property interests of plaintiffs, and as to whether there has been a taking of plaintiffs' property interests. For the reasons discussed below, the Thomas plaintiffs' motion for partial summary judgment is **GRANTED**, the Crews plaintiffs' motion for partial summary judgment is **GRANTED–IN–PART** and **DENIED–IN–PART**, and the government's cross-motion for partial summary judgment is **GRANTED–IN–PART** and **DENIED–IN–PART**.

## I. BACKGROUND

### A. The Trails Act and Regulatory Framework

Congress enacted the Trails Act to address the national problem of a reduction in rail tracks. *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 5, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990) ("*Preseault I*"). The Trails Act authorizes the Surface Transportation Board ("STB") to preserve railroad rights-of-way not currently in use for possible future rail use by converting those rights-of-way into recreational trails. *Id.* at 5–6, 110 S.Ct. 914. This process is called "railbanking." *Caldwell v. United States*, 391 F.3d 1226, 1228–29 (Fed.Cir.2004).

The STB's approval of railbanking and recreational trail use are authorized in connection with the STB's abandonment approval authority. *Id.* Before a railroad corridor may be converted into a recreational trail, the railroad must either initiate abandonment proceedings with the STB under 49 U.S.C. § 10903 (where the railroad has recently had operating train service) or seek an exemption from the ordinary abandonment procedures under 49 U.S.C. § 10502 (where the railroad has had no local rail service for at least two years). *Barclay v. United States*, 443 F.3d 1368, 1371 (Fed.Cir.2006). Under either procedure, abandonment of the rail line and right-of-way will not be approved by the STB if a qualified trail operator[1] submits to the STB a request to use the right-of-way as a recreational trail.

If the trail operator submits a statement of willingness to assume financial and legal responsibility to the STB and the railroad, the STB will, in the case of an operating railroad, issue a Certificate of Interim Trail Use or Abandonment ("CITU") which preserves the STB's jurisdiction over the rail corridor while the parties negotiate an interim trail use and railbanking agreement. *See* 49 C.F.R. § 1152.29(c). In cases involving the exemption procedure, such as the present case, the STB issues a Notice of Interim Trail Use ("NITU"), which also preserves the STB's jurisdiction over the rail corridor, allows the railroad to discontinue operations and remove track and equipment, and affords the railroad and the trail provider 180 days to negotiate a railbanking and interim trail use agreement. *Caldwell*, 391 F.3d at 1229–30; 49 C.F.R. § 1152.29(d). If an agreement is not reached, the railroad may abandon the right-of-way, at which time the STB's jurisdiction over the right-of-way terminates. 49 C.F.R. § 1152.29(d). If the parties reach an agreement, trail use is automatically authorized, and the trail provider assumes managerial and financial responsibility for the right-of-way as a recreational trail. *Caldwell*, 391 F.3d at 1229.

---

1. The statute defines "qualified trail provider" as a "state, political subdivision, or qualified private organization that is prepared to assume full responsibility for management of [railroad] rights-of-way and for any legal liability arising out of such transfer or such use, and for the payment of any and all taxes that may be levied or assessed against the [railroad] rights-of-way." 16 U.S.C. § 1247(d).

The effect of the NITU, if a railbanking and interim trail use agreement is reached, is that the STB retains jurisdiction over the rail corridor, and the abandonment of the corridor is blocked even though conditions for abandonment are otherwise met. *Id.* The STB's issuance of a NITU prevents abandonment of the right-of-way and in some cases, forestalls the reversion of state law property interests to the owners of the land adjacent to the right-of-way. *Id.* Where the issuance of a NITU precludes the vesting of state law reversionary interests, its issuance may constitute a taking of those reversionary interests in violation of the Fifth Amendment. *See id.* at 1233–34.

## B. The Trails Act and the Fifth Amendment

The Takings Clause of the Fifth Amendment provides in relevant part that "private property [shall not] be taken for public use, without just compensation." U.S. Const. Amend. V. "The Amendment 'does not prohibit the taking of private property, but instead places a condition on the exercise of that power.'" *Preseault I,* 494 U.S. at 11, 110 S.Ct. 914 (quoting *First English Evangelical Lutheran Church of Glendale v. Cnty. of Los Angeles,* 482 U.S. 304, 314, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987)). In cases involving the Trails Act, it is now settled that if the government takes private property by authorizing recreational trail use of a railroad right-of-way, the government must provide just compensation. *Preseault I,* 494 U.S. at 12–16, 110 S.Ct. 914. The Federal Circuit has determined that a taking occurs upon the issuance of the NITU, where the NITU authorizing recreational trail use effectively extinguishes the state property rights of reversion of the right-of-way to the fee owner. *Ladd v. United States,* 630 F.3d 1015, 1019 (Fed.Cir.2010), *reh'g denied,* 646 F.3d 910 (Fed.Cir.2011).

The Federal Circuit has explained that "Rails–to–Trails" cases present three primary questions:

(1) who owned the strips of land involved, specifically did the Railroad ... acquire only easements, or did it obtain fee simple estates;

(2) if the Railroad acquired only easements, were the terms of the easements limited to use for railroad purposes, or did they include future use as public recreational trails;

(3) even if the grants of the Railroad's easements were broad enough to encompass recreational trails, had these easements terminated prior to the alleged taking so that the property owners at that time held fee simples unencumbered by the easements.

*Preseault v. United States,* 100 F.3d 1525, 1533 (Fed.Cir.1996) (*"Preseault II"*); *see also Ellamae Phillips Co. v. United States,* 564 F.3d 1367, 1373 (Fed.Cir.2009). If the railroad receives only a railroad purpose easement and if the recreational trail use and railbanking authorized by the NITU exceed the scope of that easement and thereby prevent expiration of the easement and reversionary interests from vesting in the fee owners, then a Fifth Amendment taking has occurred. *See Ladd,* 630 F.3d at 1019.

## C. Factual Background

The following facts are not disputed unless otherwise noted. Plaintiffs in this action allege a Fifth Amendment taking based on their property rights in a railroad right-of-way established in the nineteenth century. Beginning in the late 1800s, the Tennessee Midland Railway Company obtained property rights in conjunction with its construction of a railroad right-of-way in Shelby County, Tennessee. The Tennessee Midland Railway Company obtained its property interests in the rail corridor through deed, prescription, and condemnation.

Through subsequent railroad transactions, CSX Transportation, Inc. ("CSXT") became the successor owner of these property interests over a 13.34 mile rail corridor extending from milepost 210.66 near Cordova and milepost 224 in Memphis, Tennessee. On September 7, 2007, CSXT filed with the STB a Notice of Exempt Abandonment seeking to abandon the railroad line. On October 5, 2007, the Memphis Community Connector ("MCC") filed with the STB a statement of willingness to assume financial responsibility over the railroad line, pursuant to the Trails

Act. On October 26, 2007, the STB issued a NITU authorizing interim trail use. On August 13, 2009, CSXT and MCC reached a Trail Use Agreement, pursuant to which CSXT transferred a 7.08 mile portion of the railroad line to MCC for use as a recreational trail. The quitclaim deed transferring this portion of the railroad line in connection with the NITU states that the property shall be used for "the sole purpose of the construction, maintenance, enhancement, operation, and use of a recreational trail." Def.'s Findings of Fact ("FOF"), Ex. E, ECF No. 79–1. CSXT reserved certain rights and easements in conveying the rail corridor, including utility easements under the rail corridor and the right to maintain commuter rail operations on the corridor subject to the approval of the trail operator should those activities interfere with the use of the trail. *Id.*

It is the 7.08 mile portion of the railroad line that is at issue in this case. The parties agree that the railroad acquired a fee interest in several segments of the subject rail corridor. *See* Joint Stipulation I, ECF No. 50. For the remaining segments of the railroad line at issue here, the parties agree that the Tennessee Midland Railway Company obtained easements in the rail corridor through prescription, condemnation, and through three voluntary conveyances made by L.D. Mullins and J.W. Small ("Mullins/Small Deed"), Rob Golightly ("Golightly Deed"), and W.H. Graff and Amanda E. Graff ("Graff Deed") in the late 1800s. Joint Stipulation II, III.

Plaintiffs are individuals and entities that claim to own land adjacent to the subject right-of-way, or a reversionary interest in the land underlying the right-of-way, on the date of the STB's October 26, 2007 NITU. Plaintiffs in this action were consolidated from two separate lawsuits, *Crews v. United States*, No. 10–459L, and *Thomas v. United States*, No. 10–54L, a class action. Plaintiffs in the *Crews* case ("Crews plaintiffs") are the heirs of L.D. Mullins, the grantor of a depot station and a portion of the rail corridor to the Tennessee Midland Railway Company under the Mullins/Small Deed.[2] Crews Pls.' FOF ¶ 2, ECF No. 23 (Case No. 10–459L). L.D. Mullins was also the grantor of certain parcels that were eventually conveyed to some of the landowners in the *Thomas* class action ("Thomas plaintiffs").[3] *See* Crews Pls.' Mot., Exs. F–L, ECF No. 24 (Case No. 10–459L). The Thomas plaintiffs claim ownership to approximately 150 parcels in their takings action.

The parties' dispute centers on four main issues, which will be addressed in more detail below. First, for the Thomas plaintiffs' parcels adjacent to the segments of the rail corridor that CSXT owns in fee, and for the Thomas plaintiffs' parcels that are not adjacent to the rail corridor, the parties agree that these plaintiffs must be dismissed. Thomas Pls.' Mot. to Dismiss, ECF No. 49. However, the parties previously disagreed as to whether this dismissal should be with or

2. The Chancery Court of Shelby County, Tennessee has determined, and the parties do not dispute, that the Crews plaintiffs are heirs of L.D. Mullins. Crews Pls.' Compl., Ex. B (an August 30, 2004 opinion of that court). The Chancery Court had also earlier determined that the property conveyed under the Mullins/Small Deed—both the depot station property and the right-of-way easement—had reverted to and revested in the heirs of L.D. Mullins and J.W. Small. *See id.* However, in a subsequent ruling, the Chancery Court found that it lacked subject matter jurisdiction to make this determination for the railroad right-of-way, and declined to comment on the property interest that CSXT held in the right-of-way. *See id.*, Ex. C at 2 n. 1. The court affirmed that the depot property had reverted to and revested in the Crews plaintiffs. *Id.* However, Shelby County has since condemned a portion of that depot station property. Joint Stipulation III.

The parties agree that the Crews plaintiffs still retain an interest in a portion of the depot property abutting the easement granted by the Mullins/Small Deed, and that therefore the Crews plaintiffs may retain a reversionary interest in the fee underlying the portion of the easement abutting their property. *See* Def.'s Cross–Mot. at 32, ECF No. 75. However, the parties agree that the depot property itself is not subject to the relevant NITU and therefore cannot be a separate parcel for which the government is liable for a taking. *See* Crews Pls.' Reply & Resp. at 4, ECF No. 84.

3. As the parties discussed at oral argument, the Crews plaintiffs' predecessor never conveyed his interest in the depot property, which was then partially condemned by Shelby County, Tennessee. *See* Joint Stipulation III.

without prejudice. *Id.* The court stayed ruling on this issue pending summary judgment briefing, and the government has moved for summary judgment as to these parcels. Def.'s Cross–Mot. at 9–10.

] Second, the parties dispute which plaintiffs own the reversionary interest in the railroad right-of-way subject to the Mullins/Small Deed, conveyed to the Tennessee Midland Railway Company by L.D. Mullins and J.W. Small in 1890. The Crews plaintiffs assert that they own the reversionary interest in this portion of the railroad line.[4] Both the Thomas plaintiffs and the government contend that the adjacent Thomas plaintiffs own the reversionary interest in the rail corridor conveyed to the railroad by the Mullins/Small Deed. In addition to these disputed property interests, it is undisputed that the Crews plaintiffs own a portion of a parcel previously used as a railroad station depot that abuts the railroad line. *See* Def.'s Cross–Mot. at 32.

Third, the Thomas plaintiffs and the government dispute the scope of the easements granted by two deeds at issue in this case, the Graff Deed and the Golightly Deed. The Thomas plaintiffs assert that these deeds conveyed an easement to the Tennessee Midland Railway Company for railroad right-of-way purposes only. The government argues that these two deeds conveyed general right-of-way easements to the railroad, and that, therefore, railbanking and trail use fall within the scope of these easements. It is undisputed that the third deed at issue in this case, the Mullins/Small Deed, granted to the railroad an easement for railroad purposes only.

Finally, the parties dispute whether railbanking and recreational trail use fall within the scope of railroad purpose easements under Tennessee law. The court will now address these four issues in turn.

## II. STANDARD OF REVIEW

When considering a summary judgment motion, the court's proper role is not to "weigh the evidence and determine the truth of the matter," but rather "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact." United States Court of Federal Claims Rule 56(a); *see also Consolidation Coal Co. v. United States,* 615 F.3d 1378, 1380 (Fed.Cir.2010). A material fact is one that "might affect the outcome of the suit," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. In reviewing the facts, "all justifiable inferences are to be drawn" in favor of the party opposing summary judgment. *Id.* at 255, 106 S.Ct. 2505.

Once the movant has shown that no genuine issue of material fact exists, the party opposing summary judgment must demonstrate that such an issue does, in fact, exist. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To establish a genuine issue of material fact, a party "must point to an evidentiary conflict created on the record; mere denials or conclusory statements are insufficient." *Radar Inds., Inc. v. Cleveland Die & Mfg. Co.,* 424 Fed.Appx. 931, 936 (Fed.Cir.2011) (quoting

---

4. In support of their claim, the Crews plaintiffs attach the affidavit of real estate attorney Gregory Voehringer. Mr. Voehringer's affidavit outlines his opinion as to whether the Crews plaintiffs own the reversionary interest in the easement granted by the Mullins/Small Deed under Tennessee law. The Thomas plaintiffs argue that this opinion should be stricken as a purely legal opinion. The Crews plaintiffs argue that Mr. Voehringer's opinion appropriately explains both the facts and the law in this case. Under the Rule 56(c)(4) of the Rules of the United States Court of Federal Claims, an affidavit opposing summary judgment must "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Under Federal Rule of Evidence 702, expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." "Expert testimony that testifies about what the law is or directs the finder of fact how to apply law to facts" does not comply with this rule. *Stobie Creek Investments, LLC v. United States,* 81 Fed.Cl. 358, 360 (2008), *aff'd* 608 F.3d 1366 (Fed.Cir. 2010) (citations omitted). Thus, the court will disregard Mr. Voehringer's affidavit.

*SRI Int'l v. Matsushita Elec. Corp. of Am.,* 775 F.2d 1107, 1116 (Fed.Cir.1985)) (internal quotation omitted). Where there is doubt as to the existence of a genuine issue of material fact, that doubt must be resolved in favor of the nonmovant. *Unigene Labs., Inc. v. Apotex, Inc.,* 655 F.3d 1352, 1360 (Fed.Cir. 2011) (citing *Ortho–McNeil Pharm., Inc. v. Mylan Labs., Inc.,* 520 F.3d 1358, 1360–61 (Fed.Cir.2008)).

When the parties have cross-moved for summary judgment, the court reviews the motions under the same standards. "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir.1987). When considering cross-motions for summary judgment, the court evaluates each motion on its own merits and reasonable inferences are resolved against the party whose motion is being considered. *Marriott Int'l Resorts, L.P. v. United States,* 586 F.3d 962, 968–69 (Fed.Cir. 2009).

## III. DISCUSSION

### A. The Thomas plaintiffs who own parcels adjacent to the rail corridor that the railroad owned in fee, or who own parcels that are not adjacent to the rail corridor, must be dismissed with prejudice.

The court first addresses the government's cross-motion for partial summary judgment regarding the Thomas plaintiffs who own parcels adjacent to a section of the rail corridor owned by the railroad in fee or who do not own parcels adjacent to the rail corridor at all. The parties agree that these plaintiffs must be dismissed because they cannot establish a takings claim. However, the Thomas plaintiffs have moved to dismiss these claimants without prejudice. The government argues that the dismissal should be

with prejudice. As noted above, the court stayed this issue pending summary judgment briefing, and the government has now moved for summary judgment against these plaintiffs.

■ The court agrees with the government that the Thomas plaintiffs who own parcels adjacent to the segments of the rail corridor that CSXT owned in fee, or who own parcels that are not adjacent to the corridor, must be dismissed with prejudice. It is a matter of black letter law that non-adjacent landowners have no claim to ownership of any segments of a right-of-way, nor do landowners adjoining portions of the rail corridor that the railroad company owned in fee. *See, e.g., Preseault II,* 100 F.3d at 1533. Based on the undisputed facts, the government is entitled to summary judgment with regard to these plaintiffs.[5]

The court now turns to the parties' arguments regarding the parcels adjacent to the railroad right-of-way easements.

### B. The Thomas plaintiffs own a superior interest in the fee underlying the Mullins/Small easement.

As noted above, the Mullins/Small Deed conveyed a portion of the railroad line to the predecessor of CSXT as an easement (referred to here as the "Mullins/Small easement"). The Mullins/Small Deed also conveyed to the railroad a parcel to be used as a depot station abutting the railroad right-of-way. It is undisputed that the Crews plaintiffs own a portion of the depot station abutting the Mullins/Small easement but no other adjacent parcels, whereas the Thomas plaintiffs own several parcels abutting the Mullins/Small easement.[6]

■ The dispute between the Crews plaintiffs and the Thomas plaintiffs centers on the ownership of the "reversionary interest" in the fee underlying the railroad easement conveyed in the Mullins/Small Deed. It is well-settled that only individuals "with a valid property interest at the time of the

---

**5.** The specific parcel numbers can be found in the Thomas plaintiffs' motion to dismiss, ECF No. 49–1, Ex. A.

**6.** The remaining portion of the depot station property was condemned by Shelby County, Tennessee. *See supra* note 2.

taking are entitled to compensation." *Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed. Cir.2001). Because real property rights arise from state law, the extent of plaintiffs' property interests in the right-of-way depend on the law of the state in which the property is located. *See, e.g., Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Protection,* — U.S. ——, 130 S.Ct. 2592, 2597, 177 L.Ed.2d 184 (2010). The burden rests on plaintiffs to prove that they owned a valid property interest in the easement at issue at the time of the taking. *See, e.g., Rhutasel v. United States,* 105 Fed.Cl. 220, 226–27 (2012); *Klamath Irrigation Dist. v. United States,* 635 F.3d 505, 520 n. 12 (Fed.Cir.2011).

### 1. The "reversionary interest" in the Mullins/Small Deed belongs to the adjacent landowners.

██ First, the parties dispute whether the language of the Mullins/Small Deed grants the "reversionary interest" in the entirety of the Mullins/Small railroad easement to the Crews plaintiffs. The Mullins/Small Deed reads in relevant part:

> L.D. Mullins and J.W. Small hereby sell transfer and convey to the Tennessee Midland Railway Company, its successors and assigns the right of way through their plantation known as the Mullins Homestead in the Seventh (7th) Civil District in Shelby County, Tennessee, which shall include fifty (50) feet on each side of a centre line of said Railroad track as now located and built on said plantation: and also a lot or parcel of ground beginning at [description of parcel], *said premises to be used for station and Railroad purposes only.*
>
> To have and to hold to said Company its successors and assigns forever.
>
> In consideration for which the Tennessee Midland Railway Company has established and hereby agrees to forever maintain a depot and side track on said premises. Said Company agrees to use only so much of said premises as may be necessary for the purposes indicated.
>
> *It is further agreed that in case the said premises shall cease to be used for the purposes indicated, or in case the said Company or its successors shall cease to*

> *maintain a side track and depot at the place then the said premises shall revert to and revert in said grantors, their heirs or assigns.*

Thomas Pls.' FOF ¶ 20 (emphasis added).

The Crews plaintiffs argue that, as the heirs of L.D. Mullins, they own the reversionary interest in the easement pursuant to the terms in the reverter clause of the Mullins/Small Deed, which states: "[I]n case the said premises shall cease to be used for the purposes indicated, or in case the said Company or its successors shall cease to maintain a side track and depot at the place *then the said premises shall revert to and revert in said grantors, their heirs or assigns.*" Crews Pls.' Mot. at 18–19 (emphasis added). The Crews plaintiffs further argue that the reversionary interest in the easement is inalienable under Tennessee law, and that, therefore, this reversionary interest could not have been subsequently conveyed to the predecessors of the Thomas plaintiffs. *Id.* at 19–21 (citing *Pickens v. Daugherty,* 217 Tenn. 349, 397 S.W.2d 815 (1966)).

The Thomas plaintiffs and the government argue that the Thomas plaintiffs who acquired property adjacent to the rail corridor own the reversionary interest in the Mullins/Small easement because "reversionary interests" in *easements* are alienable under Tennessee law. Thomas Pls.' Reply & Resp. at 10, ECF No. 89 (citing *McKinney v. Davidson Cnty.,* 194 Tenn. 689, 254 S.W.2d 975, 976, 978 (1953)); Def.'s Cross–Mot. at 29–30. Moreover, the Thomas plaintiffs and the government argue, the objects of the reverter clause in the Mullins/Small Deed are the "heirs or *assigns*" of L.D. Mullins, which would include the Thomas plaintiffs as "assigns." Thomas Pls.' FOF ¶ 20 (emphasis added); Thomas Pls.' Reply & Resp. at 11; *see* Def.'s Cross–Mot. at 29–30. Specifically, because L.D. Mullins subsequently conveyed portions of the fee property burdened by the Mullins/Small easement, the grantees of that property became the "assigns" of the reversionary interest in the fee underlying the Mullins/Small easement. Several of these properties encumbered by the Mullins/Small easement were conveyed to some of the Thomas plaintiffs, who therefore, according

to the Thomas plaintiffs and the government, owned the reversionary interest in the Mullins/Small easement on the date of the taking.

The court agrees with the Thomas plaintiffs and the government that the Crews plaintiffs do not now own the "reversionary interest" in the Mullins/Small railroad easement, except to the extent that they themselves own land adjacent to the railroad line. Rather, under Tennessee law, the Thomas plaintiffs own title to the center line of the easement. It is well-settled in Tennessee that a grant of land adjacent to a right-of-way gives the grantee a fee to the center line of the right-of-way, absent express deeded language to the contrary. *See, e.g., City of Nashville v. Lawrence*, 153 Tenn. 606, 284 S.W. 882, 883 (1926).

 This result is compelled by the language of the deed and the nature of the subject easements. In particular, the Crews plaintiffs' claim turns on the "reversionary interest" created by the Mullins/Small Deed. Under the traditional common law terminology, a "reversion" is a "future interest remaining in the transferor following the conveyance of certain lesser estates." *Preseault II*, 100 F.3d at 1533. In Tennessee, a deed granting a fee interest for a specific use creates a "reversionary interest" in the grantor of that property should the grantee cease to use the property for the specified purpose. *See Pickens*, 397 S.W.2d at 816–17.

 A deed conveying an "easement subject to a reverter clause," however, does not create a traditional common law "reversionary interest" in the fee underlying the easement. *See Preseault II*, 100 F.3d at 1533. This is because an "easement" is classically defined as a "use" interest, wherein the grantor of the easement allows the grantee to use the easement for specified purposes, but retains the underlying fee. *Id.* This terminology is a bit confused because, today, instead of calling the property owner's retained interest a "fee simple burdened by the easement," this interest is referred to as a "reversion." *Id.*

 Because the parties have stipulated that the Mullins/Small Deed granted the railroad only an easement subject to a reverter instead of a fee, the Crews plaintiffs' claim to the "reversionary interest" in the Mullins/Small easement must fail. The Crews plaintiffs base their claim on Tennessee cases addressing the traditional common law "reversion" of fee interests, rather than the law of easements subject to a reverter clause, to argue that their "reversionary interest" in the Mullins/Small easement is inalienable under Tennessee law. Without question, a deed that conveys a *fee* subject to use for a specific purpose may create an inalienable reversionary interest in the grantor of the fee should the fee stop being used for the specific purpose. *See Humphreys Cnty. Bd. of Educ. v. Baker*, 124 Tenn. 39, 134 S.W. 863, 865 (1911), *overruled on other grounds by Pickens*, 397 S.W.2d at 817. This is because under Tennessee law, the "bare possibility" of an interest in land is inalienable. *Humphreys*, 134 S.W. at 865.

However, here, the Crews plaintiffs have agreed that the Mullins/Small Deed conveys an "easement subject to a reverter" should the easement stop being used for railroad purposes. As noted above, the conveyance of an easement subject to a specific use does not create a reversionary interest in a "bare possibility" of land, because the grantor of the easement continues to own the underlying fee, subject only to the grantee's use of the easement. In this case, because Mullins and Small retained the fee interest underlying the railroad easement, the underlying fee could be, and was, transferred under Tennessee law to some of the Thomas plaintiffs. *See McKinney*, 254 S.W.2d at 978 (discussing transfer of a fee burdened by a railroad easement under terms of a deed similar to the Mullins/Small Deed); Crews Pls.' Mot., Exs. F–L. Thus, the Thomas plaintiffs, in acquiring property adjacent to the Mullins/Small easement, would have also acquired the right of reversion referred to in the Mullins/Small Deed. *Lawrence*, 284 S.W. at 883.

This conclusion comports with the language of the Mullins/Small Deed—granting a "reversionary interest" to both the heirs and *assigns* of the grantors—and the general Tennessee property law principle that, ab-

sent clear intent to the contrary, the adjacent property owner owns to the center line of an easement. *Lawrence*, 284 S.W. at 883. A primary rationale behind this rule, the Tennessee Supreme Court has stated, is "[t]he absence of any purpose to be served in the retention by the grantor of a narrow strip of land along the boundaries of the land conveyed, or the absence of any practical use to him for the strip of land." *Id.* (citation omitted). Therefore, in this case, the court concludes that the Crews plaintiffs have failed to establish as a matter of law ownership in the fee underlying the Mullins/Small easement based on the language of the Mullins/Small Deed alone. Rather, the Thomas plaintiffs own the "reversionary interest" in the fee underlying the Mullins/Small easement, subject to resolution of the Crews plaintiffs' second argument, discussed below.

2. **The "reversionary interest" in the Mullins/Small easement belongs to seven of the Thomas plaintiffs' adjacent parcels.**

For seven parcels owned by the Thomas plaintiffs and adjacent to the railroad easement granted by the Mullins/Small Deed, the Crews plaintiffs argue that they retained the ownership in the reversionary interest because the fee underlying the railroad easement was "excepted" from the conveyance of these abutting parcels. Put another way, the Crews plaintiffs contend that the fee underlying the Mullins/Small easement was never transferred to the Thomas plaintiffs. The seven Thomas plaintiffs are Agricenter Hotel Group, LLC, Bonfire, Osman, Carpio, Armenta, Estate of Smith, and the State of Tennessee.

The Thomas plaintiffs and the government argue that the language relied on by the Crews plaintiffs did not exclude the railroad right-of-way from the conveyances of the abutting parcels. The court will discuss the specific arguments for the seven parcels in turn, grouping the parcels by common chain of title.

a. **The Agricenter Hotel Group, LLC and the Bonfire Parcels**

The Crews plaintiffs argue that in one of the conveyances to a predecessor in title to Agricenter Hotel Group, LLC and

Bonfire, the grantor specifically excepted the railroad right-of-way by including specific language withholding the right-of-way from the conveyance. The Thomas plaintiffs and the government counter that the language found in the deed is not enough under Tennessee law to exclude the conveyance of the fee underlying the easement. The court agrees with the Thomas plaintiffs and the government.

The deed the Crews plaintiffs rely on conveys a parcel adjacent to the railroad right-of-way to C.M. Skaggs. The relevant language is as follows:

[Grantor railroad] has this day bargained and sold and by these presents does transfer and convey unto C.M. Skaggs, his heirs and assigns, the following described real estate situated and being in the County of Shelby, State of Tennessee, more particularly described as follows:

[A parcel adjacent to the right of way running 700 feet] westwardly with said right of way line . . .

*Also an easement for ingress and egress over the tracks of the Grantor [Railroad] as at present located to and from the public dirt road,* which said right of way separates from the land conveyed hereby and said easement to be exercised *subject to the prior right of way at all times of railroad traffic on tracks of said railway and subject to the rules and regulations governing such easements.*

Crews Pls.' Mot., Ex. F (emphasis added to language relied on by the Crews plaintiffs).

The Crews plaintiffs argue that because the adjacent parcel was made "subject to" the prior right-of-way in this deed, the right-of-way was excluded from the conveyance of the adjacent parcel. The Thomas plaintiffs and the government argue that the language highlighted by the Crews plaintiffs must be read in conjunction with the rest of the language in the deed, which makes it clear that there was a separate easement for ingress and egress over the railroad tracks made "subject to" the railroad right-of-way itself, and that this language does not address the relationship between the railroad right-of-way and the larger parcel conveyed, nor does

it except from the conveyance the prior right-of-way. The court agrees with the Thomas plaintiffs and the government regarding the language of the C.M. Skaggs deed.

■ This view is supported by Tennessee law, which provides that a grantor must use express language to reserve the fee underlying a right-of-way. For example, in *Brumit v. Virginia & Southwestern Railroad Co.*, the Tennessee Supreme Court found that the language "[r]eserving and excepting out of this conveyance, however, all streets, alleys, and other highways indicated on said plat, and the fee-simple title to the lands conveyed thereby" was needed to reserve the underlying fee interest. 106 Tenn. 124, 60 S.W. 505, 505 (1900). The above deed grant does not include explicit language excepting the right-of-way from the conveyance. It is for these reasons that the court finds that Thomas plaintiffs Agricenter Hotel Group, LLC and Bonfire have established a superior claim to the reversionary interest.

### b. The Osman, Carpio, Armenta, and Estate of Smith Parcels

The Crews plaintiffs next assert that a deed, common in the chains of title of plaintiffs Osman, Carpio, Armenta, and Estate of Smith, specifically excepted the fee underlying the right-of-way from the conveyance by describing the property conveyed as "lying north of the [railroad right-of-way]." Crews Pls.' Mot., Exs. H–K. The Thomas plaintiffs and the government argue that this descriptive language is not enough to reserve the fee underlying the right-of-way. The court again agrees with the Thomas plaintiffs and the government.

■ A grant of land adjacent to a right-of-way in Tennessee carries the grantee's fee to the center of the right-of-way, absent a clear intention expressed by the grantor to reserve the right-of-way to itself. *See, e.g., Lawrence*, 284 S.W. at 883; *Stokely Co. v. Fort Loudon Elec. Coop.*, No. 03A01–9209–CH–00353, 1993 WL 82303, at *1 (Tenn.Ct. App. Mar. 24, 1993). For example, where a grantor conveys two parcels abutting a right-of-way, describing one parcel as "bounded" by the right-of-way and another "including the right-of-way, but excluding the [parcel conveyed by the first deed]," the Tennessee Court of Appeals has found that the first parcel did not own to the center line of the right-of-way. *Noble v. Sorenson*, No. 88–24–II, 1988 WL 60482, at *3 (Tenn.Ct.App. June 17, 1988).

However, the Tennessee Supreme Court has held that where a deed merely includes a property description such as "west side of Central avenue," the conveyance includes the fee to the center line of the adjacent right-of-way easement, and "does not imply that the plaintiff's line stops at the margin of the street." *Hamilton Cnty. v. Rape*, 101 Tenn. 222, 47 S.W. 416, 417 (1898). The Tennessee Supreme Court has also concluded that deeds describing the property conveyed as "to the margin" of a street or "along the west side" of a street convey to the center line of the street. *Lawrence*, 284 S.W. at 882, 888. Similarly, the Tennessee Court of Appeals has held that the description "bounded by [a highway] and by the old road on the East and by a private roadway" does not act to exclude the underlying fee in the highway; instead, the grantee receives the fee to the center line. *Walker v. Tanner*, 38 Tenn.App. 437, 275 S.W.2d 958, 958–60 (1954).[7]

---

7. One Tennessee Supreme Court case that deviates from this general strain is *Iron Mountain R.R. Co. v. Bingham*, 87 Tenn. 522, 11 S.W. 705, 706 (1889), where the court, without providing a description of the deed, stated that a deed "calling for the side of the street" does not convey to the center line of the street. However, the Tennessee Supreme Court has subsequently stated that this case goes against the general rule that the abutting parcel owns to the center line of an easement, and had noted that in that case, "[t]hat deed was not incorporated in the opinion" and

"[t]he record is silent as to whether Mrs. Bingham's grantor owned the fee in said avenue. If he did not, that of itself would necessarily restrict her to the margin of the avenue." *Lawrence*, 284 S.W. at 887–88. Therefore, this court will follow the Tennessee Supreme Court's opinion that the *Bingham* opinion is not persuasive due to the unclear record. Moreover, the language in the deed identified by the Crews plaintiffs does not call for the "side of" the right-of-way, and thus *Bingham* is factually distinguishable.

**[■]** The property description in the deed common in the chains of title of the Osman, Carpio, Armenta, and Estate of Smith plaintiffs, "lying north of the [railroad right-of-way]," is similar to the above deeds that under Tennessee law have been found to convey to the center line of the easement. The property description lacks the express language conveying a clear intention by the grantor to reserve the fee underlying the right-of-way that can be found in other Tennessee cases. *See, e.g., Noble,* 1988 WL 60482, at *3; *Brumit,* 60 S.W. at 505. Therefore, the court finds that the Thomas plaintiffs have a superior claim to the underlying fee.

#### c. The State of Tennessee Parcel

**[■]** Finally, the Crews plaintiffs argue that a deed in the chain of title for the State of Tennessee's property abutting the rail corridor excludes the right-of-way, because the deed conveyed property "beginning ... in the north right of way line ... thence West along the north right of way line of the Louisville and Nashville railroad." Crews Pls.' Mot., Ex. L. However, for the same reasons discussed above, this descriptive language is not enough to except out of the conveyance the fee underlying the railroad right-of-way. Therefore, for the State of Tennessee parcel, the court finds that the State of Tennessee has a superior claim.

### 3. Conclusion

For the foregoing reasons, the court concludes that the Thomas plaintiffs have a superior claim to the fee underlying the Mullins/Small easement and the government and the Thomas plaintiffs are entitled to summary judgment on this issue. The Crews plaintiffs, however, still retain an interest in this litigation, because they own a portion of the depot station parcel that is adjacent to the Mullins/Small easement. The court still must resolve whether the government is liable for a taking of the Crews and Thomas plaintiffs' reversionary interests. First, however, the court must resolve whether two additional deeds, granting easements to CSXT for use as a right-of-way for the railroad line across some of the Thomas plaintiffs' parcels, conveyed easements that are limited to railroad purposes only.

### C. The Graff and Golightly Deeds limit the easements granted by those deeds to railroad purposes only.[8]

The Thomas plaintiffs and the government disagree as to whether two easements at issue in this case are limited to railroad right-of-way purposes, or are instead general purpose right-of-way easements.[9] If the railroad obtained general right-of-way easements through these two deeds, then recreational trail use could be permissible under these easements, and the government would not be liable for a taking.[10] However, if the easements are limited to railroad purposes, the court must then determine if railbanking and trail use are permissible under these railroad purpose easements. For the reasons discussed below, the court finds that the Graff and Golightly Deeds conveyed rights-of-way limited to railroad purposes only under Tennessee law.

### 1. Principles of deed interpretation under Tennessee law.

**[■]** In Tennessee, easements can be created in several different ways, including by express grant, implication, prescription, estoppel, reservation, and condemnation. *Cellco P'ship v. Shelby Cnty.,* 172 S.W.3d 574, 588 (Tenn.Ct.App.2005) (citing *Pevear v. Hunt,* 924 S.W.2d 114, 115–16 (Tenn.Ct.App.

---

8. The parties agree that the easements obtained by condemnation and prescription, and the Mullins/Small Deed, are limited to railroad purposes under Tennessee law. *See* Def.'s Cross–Mot. at 2–3.

9. The Crews plaintiffs do not claim a reversionary interest in these easements, nor do they own property adjacent to the easements conveyed by these deeds. Therefore, this dispute is between the government and the Thomas plaintiffs only.

10. This is true unless the plaintiffs could show that the railroad had abandoned the subject rail corridor before the issuance of the NITU, such that the easements had already reverted to plaintiffs before railbanking and interim trail use were imposed on plaintiffs' property pursuant to the Trails Act. *See Preseault II,* 100 F.3d at 1533.

1996)). Generally, when an easement is created by an express grant, the extent of the easement must be determined by the language of the agreement. *See, e.g., Foshee v. Brigman*, 174 Tenn. 564, 129 S.W.2d 207, 208 (1939); *Columbia Gulf Transmission Co. v. Governors Club Prop. Owners Ass'n*, No. M2005–01193–COA–R3–CV, 2006 WL 2449909, at *3 (Tenn.Ct.App. Aug. 21, 2006).

The Tennessee courts have also applied special rules of construction to conveyances to railroad companies. The Tennessee Supreme Court has held that "[t]he estate acquired by [a] railroad company is to be determined from the intention of the parties gathered from the deed construed in connection with the company's charter, or governing statutes, and, in case of ambiguity, if any, in light of the circumstances surrounding the execution of the deed." *Nashville, Chattanooga & St. Louis Ry. v. Bell*, 162 Tenn. 661, 39 S.W.2d 1026, 1027 (1931); *see also Buhl v. U.S. Sprint Commc'ns Co.*, 840 S.W.2d 904, 907 (Tenn.Ct.App.1992). Tennessee courts have also noted that "right-of-way" easements granted to railroads are limited to railroad purposes only: "A 'right of way' in its legal and generally accepted meaning in reference to a railroad company's interest in land is a mere easement for railroad purposes in the lands of others." *See, e.g., Bell*, 39 S.W.2d at 1028 (quotation omitted).

### 2. The Graff and Golightly Deeds are limited to railroad purposes only under Tennessee law.

With these rules of construction in mind, the court now turns to the deeds at issue. The relevant language of the Graff Deed is as follows:

> Know All Men by these Presents That We, W.H. Graff and Amanda E. Graff his wife of the County of Shelby in the State of Tennessee, in consideration of the sum of Five Hundred dollars to us in hand paid by the Tennessee Midland Railway Company, the receipt whereof is hereby acknowledged, and in further consideration of the benefits accruing from the construction of its line of railroad through the land hereinafter described by said Tennessee

Midland Railway Company, *have bargained and sold, and by these presents do grant, bargain, sell, and convey to the said Tennessee Midland Railway Company, its successors and assigns, a Right of Way* Seventy five (75) feet wide, being fifty (50) feet in South side of the center of the track thereof and Twenty five (25 feet on the North side, as the same now is located through, across, and over the following lands situate in Shelby County, in the State of Tennessee, to wit: [description of property]

> To Have and To Hold the same and every part thereof unto the said Tennessee Midland Railway Company, its successors and assigns forever.

> And we covenant and bind ourselves, our heirs and representations to *warrant and defend the title to said strip of land herein conveyed as a right of way to the said Railway Company*, its successors and assigns, against the claims of all persons whatsoever.

Thomas Pls.' FOF ¶ 18; Thomas Pls.' Mot., Ex. K (emphasis added).

The relevant language of the Golightly deed is as follows:

> In consideration of One Hundred Dollars to me in hand paid the receipt of which I hereby acknowledge I have granted bargained, sold and do, by *these presents convey unto the Tennessee Midland Railway Company its successors and assigns a right of way one hundred feet, wide across* [description of land], and *said right of way of one hundred feet being fifty feet on each side from the centre of the line of said Company's railway* as located and staked out across the said corner, and the title to said right of way I do for myself and my heirs warrant & defend unto the said Tennessee Midland Railway Company its successors and assigns forever.

Thomas Pls.' FOF ¶ 19; Thomas Pls.' Mot., Ex. L (emphasis added).

Both deeds grant a "right-of-way" to the Tennessee Midland Railway Company. The parties agree that both deeds convey only an easement to the railroad. Joint Stipulation

II. The parties disagree as to whether these easements are limited to railroad purposes.

The Thomas plaintiffs argue that in Tennessee, any conveyance of a "right-of-way" to a railroad grants an easement limited to railroad purposes. The Thomas plaintiffs rely mainly on the Tennessee Supreme Court's decisions in *McLemore v. Memphis & Charleston Railroad Co.*, 111 Tenn. 639, 69 S.W. 338, 342 (1902) and *East Tennessee Railway Co. v. Telford's Executors*, 89 Tenn. 293, 14 S.W. 776, 777 (1890). In *McLemore*, the Tennessee Supreme Court found that the "grant of a right of way to a railroad company is the grant of an easement merely, and the fee remains in the grantor. The nature of an easement, for railroad right of way purposes, is so clearly stated in *Railway Co. v. Telford's Ex'rs*, that we cannot hope to add anything to what has there been said." *McLemore*, 69 S.W. at 342. In *Telford's Executors*, the Tennessee Supreme Court describes a railroad purpose easement as one that "gives to a railroad company a right of way in the land; that is, the right to use the land for its purpose. This includes the right to employ the land taken for the purpose of constructing, maintaining, and operating a railroad thereon." 14 S.W. at 777. Based on this case law, the Thomas plaintiffs contend that by their terms the Graff and Golightly Deeds convey easements limited to railroad purposes because they convey a "right-of-way" to the railroad.

The government argues that the Graff and Golightly Deeds convey unrestricted general purpose right-of-way easements because there is no language in either deed that limits the easement to railroad purposes. The government argues that, generally, the extent of an easement is determined by the language of the granting deed. Def.'s Cross–Mot. at 13 (citing *Foshee*, 129 S.W.2d at 208). Here, the government argues, the Graff and Golightly Deeds do not limit the use of the easement to a specific purpose. In Tennessee, the government contends, "a grant of a right-of-way for all purposes is not restricted to one purpose because the owner thereof has had occasion for a long time to use it for that purpose only .... where a [right of] way is granted or reserved without

limitations as to its use, it will not necessarily be confined to the purposes for which the land was used at the time the way was created." *Henry v. Tenn. Elec. Power Co.*, 5 Tenn.App. 205, 1927 WL 2123, at *2 (1927) (discussing the scope of an easement for electric transmission purposes). In the railroad context, the government also relies on the Tennessee Supreme Court's decision in *Pemberton v. Southern Railway Co.*, 162 Tenn. 65, 34 S.W.2d 444, 445 (1931), which stated that "where land obtained by purchase ... is conveyed by an instrument which purports to convey a right of way only, it does not convey title to the land itself, but the railroad company acquires a mere easement in the land for right of way purposes."

The extent of the easement rights conveyed by a deed merely granting a "right-of-way" to a railroad company, without further limiting language, has not been specifically addressed by the Tennessee courts. The court agrees with the government that the cases plaintiffs rely on are not dispositive of this issue, because in those cases the deeds in question were specifically limited by their terms to railroad purposes, or the court determined that the deed in question conveyed a fee rather than an easement. *See Telford's Ex'rs*, 14 S.W. at 776 (where the railroad easement was obtained by charter presumption); *McLemore*, 69 S.W. at 338 (where the deed stated "and for this purpose the said McLemore grants to the said [railroad] the right of way through any of his lands over which the said lateral road may pass"); *Lillard v. S. Ry. Co.*, 206 Tenn. 1, 330 S.W.2d 335, 337 (1959) (where the deed stated "the right-of-way for a railroad 200 feet in width, or so much thereof as may be necessary for the construction of said railroad"); *Baird v. S. Ry. Co.*, 179 Tenn. 366, 166 S.W.2d 617, 619 (1942) (where the deed conveyed a fee); *Buhl*, 840 S.W.2d at 907 (where the deed limited the purpose of the easement); *Noble*, 1988 WL 60482, at *1 (where the deed conveyed "a right-of-way on which to construct and operate [the railroad's] said railroad"); *Smoky Mountain R.R. Co. v. Paine Oil Co.*, 496 S.W.2d 904, 907 (Tenn.Ct.App.1973) (where the deed expressly conveyed a right-of-way for railroad purposes); *Bell*, 39

S.W.2d at 1029 (where the deed conveyed a fee).

The language of the granting deed must be the primary guide for the court in construing the scope of the easement. *See Henry*, 1927 WL 2123, at *2; *River City Resort v. Norfolk S. Ry. Co.*, No. E1999–02567–COA–R3–CV, 2001 WL 8539, at *2 (Tenn.Ct.App. May 21, 2001) (holding that if easement language is clear and unambiguous and does not limit its duration, then the court cannot impose such a limitation); *Regen v. E. Fork Farms, LP*, No. M2008–01414–COA–R3–CV, 2009 WL 3672788, at *2 (Tenn.Ct. App. Nov. 4, 2009). Based on the court's review of the language in the Graff and Golightly Deeds and Tennessee law regarding the conveyance of easements to railroads, the court concludes that the easements granted by the Graff and Golightly Deeds are limited to railroad right-of-way purposes only, and are not general purpose rights-of-way.

This conclusion is largely compelled by the decisions of the Tennessee Supreme Court and Tennessee lower courts, which have consistently limited the rights obtained by railroads and have stated that "rights-of-way" in the context of conveyances to railroads are limited to railroad purposes:

> A "right of way" in its legal and generally accepted meaning in reference to a *railroad company's interest in land is a mere easement for railroad purposes in the lands of others;* and therefore, as a general rule, where land obtained by purchase or agreement is conveyed by an instrument which purports to convey a right of way only, it does not convey title to the land itself, but the railroad company acquires a mere easement in the land for right of way purposes.

*Bell*, 39 S.W.2d at 1028 (quoting 51 C.J. § 203) (emphasis added); *see also Baird*, 166 S.W.2d at 618 (citations omitted); *Smoky Mountain*, 496 S.W.2d at 909–10 (quotation and citations omitted); *Noble*, 1988 WL 60482, at *2 (quotation and citations omitted); *Buhl*, 840 S.W.2d at 907 (quotation and citations omitted). While the court recognizes that this principle has been cited by the Tennessee courts in the context of whether a right-of-way deed grants a fee rather than an easement, the uniform approach of the Tennessee courts in treating the grant of a "right-of-way" to a railroad as granting a limited "railroad purposes" easement leads the court to conclude that the Graff and Golightly Deeds grant right-of-way easements limited to railroad use.

In addition, while the granting deed language will serve as the primary interpretative guide for the courts under Tennessee law, the cases the government relies on also hold that the interpretation of this deeded language may be "aided by any concomitant circumstances which have a legitimate tendence to show the intention of the party" where the language of the granting deed is ambiguous. *Henry*, 1927 WL 2123, at *2; *see also Cellco P'ship*, 172 S.W.3d at 595; *Bell*, 39 S.W.2d at 1027; *Buhl*, 840 S.W.2d at 907. The language of the Graff and Golightly Deeds both indicate that the parties knew a railway was to be constructed on their properties. The Graff Deeds mentions the "construction of [the Tennessee Midland Railway Company's] line of railroad." Thomas Pls.' FOF ¶ 18. The Golightly Deed mentions that "Company's railway as located and staked out." *Id.* ¶ 19. Interpreting the deeds together with their surrounding circumstances, the court concludes that the intention of the parties in this instance was to grant to the railroad a right-of-way for use as a rail corridor. Based on Tennessee rules of deed construction and the language of the Graff and Golightly Deeds, the court finds that the Thomas plaintiffs are therefore entitled to summary judgment on this issue.

### D. The government is liable for a taking of plaintiffs' property interests.

Having determined that the easements granted by condemnation, prescription, and the Mullins/Small, Graff, and Golightly Deeds conveyed easements limited to railroad purposes only, the court must now determine, under the second step of the Federal Circuit's *Preseault II* framework, whether railbanking and trail use fall outside the scope of these railroad purpose easements

under Tennessee law.[11] *Preseault II,* 100 F.3d at 1533 (holding that the court must ask "if the Railroad acquired only easements, were the terms of the easements limited to use for railroad purposes, or did they include future use as public recreational trails"). Under *Preseault II,* if recreational trail use and railbanking as authorized by the NITU exceed the scope of a railroad purpose easement and prevent state law reversionary interests from vesting in the fee owners, then a taking has occurred. *See Ladd,* 630 F.3d at 1019.

In support of its argument that railbanking and trail use do not amount to a taking by the federal government, the government argues that (1) the government is not responsible for the trail use that exceeds the scope of the easements, (2) railbanking is a railroad purpose under Tennessee law, and (3) under Tennessee law, railbanking and trail use do not cause "abandonment" of the rail corridor. The court now addresses each of the government's arguments.

### 1. The government's NITU authorizes uses that exceed the scope of the railroad purpose easements.

The parties agree that, in Tennessee, an easement for railroad purposes encompasses "only those uses incident to the construction, maintenance, and operation of the railroad." *See, e.g., Buhl,* 840 S.W.2d at 910. Under Tennessee law, a third party's use of a railroad purpose easement must be consistent with that of the railroad and not interfere with its use, and must also be "needful and helpful to the operation of the road itself." *Id.* (citing *Mobile & Ohio R.R. Co. v. Postal Tel. Cable Co.,* 101 Tenn. 62, 46 S.W. 571, 572 (1898)).

To begin, the court agrees with plaintiffs that recreational trail use clearly falls outside of the scope of a railroad purpose easement in Tennessee. Recreational trail use is certainly not "needful and helpful" to the operation of a railroad. *Buhl,* 840 S.W.2d at 910. This conclusion is supported by the Tennessee Court of Appeals holding in *Smoky Mountain Railroad Co. v. Paine Oil Co.,* where the court quoted the following passage from the trial judge with approval: "The mention of a 'bicycle path' is obviously for a purpose not countenanced in the operation of a railroad." 496 S.W.2d at 907.

To argue against its taking liability, the government does not dispute that trail use "may not [be] a railroad purpose," but instead argues that the government itself is not responsible for the recreational trail. Def.'s Cross–Mot. at 23. In support, the government contends that the Trails Act and its regulatory scheme only authorize railbanking and do not authorize interim trail use. The government also argues that, under the Federal Circuit's recent holdings that a takings claim accrues upon the issuance of a NITU, the federal government is liable only for the actions taken by the STB in issuing the NITU, and that the NITU authorizes railbanking and nothing more. *See Caldwell,* 391 F.3d at 1233; *Barclay,* 443 F.3d at 1373; *Ladd,* 630 F.3d at 1023. Therefore, the government contends, a determination that trail use is outside the scope of the railroad easements in this case is irrelevant to the court's liability determination. The court disagrees.

First, the Federal Circuit has expressly rejected the government's argument that trail use is irrelevant to this court's liability determination. Under the *Preseault*

11. Several courts have found that such a compensable taking has resulted under the respective state laws in connection with railroad purpose easements. *See, e.g., Preseault II,* 100 F.3d 1525 (Vermont); *Lawson v. State,* 107 Wash.2d 444, 730 P.2d 1308 (1986) (Washington); *Pollnow v. State Dep't of Natural Resources,* 88 Wis.2d 350, 276 N.W.2d 738 (1979) (Wisconsin); *Glosemeyer v. United States,* 45 Fed.Cl. 771 (2000) (Missouri); *Toews v. United States,* 376 F.3d 1371 (Fed.Cir. 2004) (California); *Rogers v. United States,* 90 Fed.Cl. 418 (2009) (Florida); *Macy Elevator v. United States,* 97 Fed.Cl. 708 (2011) (Indiana); *Capreal, Inc. v. United States,* 99 Fed.Cl. 133 (2011) (Massachusetts); *Ybanez v. United States,* 98 Fed.Cl. 659 (2011) (Texas); *Biery v. United States,* 99 Fed.Cl. 565 (2011) (Kansas). In several other states, courts have found that the STB's authorization of railbanking and recreational trail use does not give rise to a taking based on the terms of the railroad's easements in those cases and the applicable state law. *See Moody v. Allegheny Valley Land Trust,* 601 Pa. 655, 976 A.2d 484 (2009) (Pennsylvania); *Chevy Chase Land Co. v. United States,* 355 Md. 110, 733 A.2d 1055 (1999) (Maryland); *Wash. Wildlife Preservation, Inc. v. State,* 329 N.W.2d 543 (Minn.1983) (Minnesota).

*II* framework laid out by the Federal Circuit, the court must determine whether "the terms of the easements limited [their] use [to] railroad purposes, or did they include future use as public recreational trails." *Preseault II*, 100 F.3d at 1533. As the Federal Circuit has stated in *Ladd v. United States*, 630 F.3d at 1019: "It is settled law that a Fifth Amendment taking occurs in Rails–to–Trails cases when government action destroys state-defined property rights by converting a railway easement to a recreational trail, if trail use is outside the scope of the original railway easement." The court therefore agrees with plaintiffs that recent Federal Circuit precedent expressly incorporates consideration of recreational trail use in a "Rails–to–Trails" taking liability determination. The government's argument that trail use is irrelevant to the taking determination is directly contrary to this precedent.

 This court recently rejected the government's arguments that the United States is not responsible for trail use in *Jenkins v. United States*, 102 Fed.Cl. 598, 619 (2011). As the *Jenkins* opinion explains, the Trails Act scheme does not, as the government contends, authorize only that the railway right-of-way will not be deemed abandoned for railroad purposes if the corridor is railbanked. The preemption of abandonment and the attendant blocking of the reversionary interest, which gives rise to the taking, is expressly conditioned on a trail operator reaching an agreement with the railroad for trail use, as well as the trail operator's consent to railbanking. *See* 49 C.F.R. § 1152.29(d)(1). If a trail use agreement cannot be reached, railbanking is not separately permitted. Rather, without a trail use agreement, the railroad line will be abandoned, the federal government will lose its jurisdiction over the right-of-way, and the property will revert to the underlying fee owners. *Jenkins*, 102 Fed.Cl. at 615.

 Moreover, as discussed in *Jenkins*, 102 Fed.Cl. at 617, Federal Circuit precedent has also made clear that the government's taking liability extends to the foreseeable consequences of the actions that arose from issuance of the NITU, and that the government cannot escape liability by claiming that

it is not the trail operator. *See Preseault II*, 100 F.3d at 1551 (holding that "when the Federal Government puts into play a series of events which result in a taking of private property, the fact that the Government acts through a[n] … agent does not absolve it from the responsibility, and the consequences, of its actions"); *Toews v. United States*, 376 F.3d 1371, 1381–82 (Fed.Cir.2004) (holding the federal government "responsible for the immediately foreseeable consequences of its actions").

In sum, the court finds unpersuasive the government's argument that it is not responsible for trail use based on the language of the Trails Act, its regulatory scheme, and the Federal Circuit's "takings accrual" cases. *See Jenkins*, 102 Fed.Cl. at 613–19. Therefore, the court concludes that the government's taking liability extends to recreational trail use, and that there is no doubt that, under Tennessee law, recreational trail use exceeds the scope of the railroad purpose easements here.

### 2. Railbanking also exceeds the scope of the railroad purpose easements under Tennessee law.

The government next argues that it is not liable for a taking because railbanking fits the definition of railroad purposes under Tennessee law as a method of railroad maintenance. The government relies on the general rule applying to Tennessee easements that "the owner of an easement of way may prepare, maintain, improve, or repair the way in a manner and to an extent reasonably calculated to promote the purposes for which it was created or acquitted." *Mize v. Ownby*, 189 Tenn. 207, 225 S.W.2d 33, 35 (1949) (citation omitted). The government also argues that under Tennessee law, non-use of an easement by a railroad and simultaneous inconsistent use by the underlying fee owner does not result in adverse possession or abandonment of the railroad's easement, but instead such non-use is considered a business decision within the railroad's discretion. Def.'s Cross–Mot. at 21–23. Relying on these precedents, the government contends that railbanking should be viewed as a business decision by the railroad, and that inconsistent but non-interfering trail use should

not trigger plaintiffs' right of reversion and thus a taking by the federal government. *Id.*

■ The court disagrees and concludes for the reasons that follow that, under Tennessee law, railbanking is not a railroad purpose. As discussed above, in Tennessee, a third party's use of a railroad purpose easement must be consistent with that of the railroad and not interfere with its use, and must also be "needful and helpful to the operation of the road itself." *Buhl,* 840 S.W.2d at 910 (citing *Mobile & Ohio R.R.,* 46 S.W. at 572). Here, the railroad's decision to transfer its property for a non-railroad use to the trail operator does not meet the "needful and helpful" test established by the Tennessee courts.

■ The fact that railbanking is part of the trail use agreement that transferred the rail corridor to the trail operator does not alter this conclusion.[12] Under Tennessee law, speculation about the resumption of rail service is not enough to preclude termination of a railroad purpose easement. In *Smoky Mountain Railroad Co.,* the Interstate Commerce Commission (the predecessor to the STB) approved the abandonment of operations of a certain railroad. 496 S.W.2d at 906. Several years later, the railroad's receiver argued that it had not abandoned its right-of-way, in part relying on "talk" of potential resumption of rail service. *Id.* at 907. Quoting language from the trial judge favorably, the Court of Appeals concluded that the railroad had in fact abandoned its easement, and that "talk" of resumption of rail service was not sufficient to preclude abandonment: "From all the facts in this case, no conclusion can be drawn other than that of an abandonment of the right of way for railroad purposes. Any other conclusion would be to disregard the uncontroverted facts of this case. While there has been some 'talk' of

reactivating the railroad, ... there has been nothing brought to the Court's attention to indicate that this was other than 'talk.' " *Id.*

The court finds the rationale of the Tennessee Court of Appeals applicable in this case. In its Petition for Exemption filed with the STB, CSXT stated that the subject railroad line had been "out of service for over two years," that it "does not expect any rail oriented business to develop on the Line," and that there has been "no recent demand for rail service and there is no prospect that rail service will be required in the near future." Thomas Pls.' Mot., Ex. D at 3, 6, 7. The government does not contradict these statements. These facts, and the transfer of the easement to a trail operator for a use completely unconnected with rail service, Def.'s FOF, Ex. E (the quitclaim deed to MCC stating that the property shall be used for "the sole purpose of the construction, maintenance, enhancement, operation, and use of a recreational trail"), lead the court to conclude that any future rail use is too hypothetical to be connected with the "needful and helpful ... *operation* " of the railroad under Tennessee law. *Buhl,* 840 S.W.2d at 910 (emphasis added and quotation omitted).

Finally, the court finds the government's reliance on the Tennessee cases addressing inconsistent use of railroad purpose easements by underlying fee owners unpersuasive. In these cases, the Tennessee courts have held that non-use by a railroad and inconsistent use by the underlying fee owner do not result in adverse possession by the underlying fee owner or abandonment by the railroad. *See Nashville, Chattanooga & St. Louis Ry. v. McReynolds,* 48 S.W. 258, 259–60 (Tenn.Ch.App.1898); *S. Ry. Co. v. Vann,* 142 Tenn. 76, 216 S.W. 727, 729 (1919). However, in these cases, the railroad did not

---

12. At oral argument, the government argued that this case was different from a typical "Rails–to–Trails" case because, in the quitclaim deed transferring the rail corridor from CSXT to the trail operator, CSXT itself retained substantial rights in the corridor, including the right to institute commuter rail service and to retain certain utility easements under the corridor. *See* Def.'s FOF, Ex. E. However, the court agrees with plaintiffs that the language of the quitclaim deed is not enough to show that railbanking is a railroad

purpose under Tennessee law. This quitclaim deed was executed in the context of the NITU, which requires that the trail operator acknowledge that rail service could be reactivated at any time, including commuter rail service. Moreover, because the railroad owned and transferred portions of the railroad corridor in fee, it is not remarkable for the railroad to include clauses retaining its other easement rights in the quitclaim deed.

take any affirmation action to relinquish its interest in its easement to a third party for non-railroad use; rather, the railroad merely decided not to use the railroad easement for a portion of a potential line, leaving the underlying fee owners to use the easement until the railroad decided to begin rail service. Here, CSXT sought to abandon the corridor, and under the Trails Act transferred its interest in the rail corridor to a third-party trail operator. While the corridor was also railbanked, and CSXT retained some rights to reinstitute commuter rail service, these actions, while perhaps made in the interest of CSXT, do not amount to the "maintenance" necessary for the continued operation of CSXT's rail service under Tennessee law. Rather, CSXT's transfer of the corridor affirmatively precludes railroad operations along the corridor without permission of the non-railroad third party trail operator should these operations interfere with trail use, or until the STB, under the Trails Act, decides to reactivate rail service, abandon the property, or otherwise exercise its jurisdiction over the corridor. Def.'s FOF, Ex. E. The court therefore concludes that, under Tennessee law, the railbanking here exceeds the scope of the railroad purpose easements obtained through condemnation, prescription, and voluntary conveyance through the Mullins/Small, Graff, and Golightly Deeds.

### 3. Abandonment is not relevant to the government's taking liability.

Having concluded that railbanking and trail use fall outside the scope of the railroad purpose easements under Tennessee law, the court declines to address the government's arguments that railbanking and trail use under the Trails Act do not constitute Tennessee common law abandonment. Having determined that the railroad purpose easements do not encompass use as a recreational trail, the court finds it unnecessary to address whether the easements were abandoned for liability purposes. *See Toews,* 376 F.3d at 1381.

## IV. CONCLUSION

For the foregoing reasons, the court finds as follows:

1. The Crews plaintiffs' motion for summary judgment with respect to their interest in the fee underlying the railroad purpose easement granted by Mullins/Small Deed is **DENIED.** The Crews plaintiffs' motion for summary judgment with respect to the government's liability for their interest in the fee underlying the railroad easement adjacent to the portion of the depot property owned by the Crews plaintiffs is **GRANTED.**

2. The Thomas plaintiffs' motion for summary judgment with respect to their interests in the fee underlying the railroad purpose easement granted by the Mullins/Small Deed is **GRANTED.** The Thomas plaintiffs' motion for summary judgment with respect to the government's liability for their interest in the fee underlying the railroad easement adjacent to their properties is also **GRANTED.**

3. The government's motion for summary judgment with regard to the Crews plaintiffs' property interests granted by the Mullins/Small Deed is **GRANTED.** The government's motion for summary judgment as to its takings liability for the condemned easements, prescriptive easements, and railroad purpose easements granted by the Graff, Golightly, and Mullins/Small Deeds is **DENIED.**

4. The government's motion for summary judgment with regard to the Thomas plaintiffs who own property adjacent to those portions of the rail corridor that the railroad owned in fee or who own parcels that are not adjacent to the railroad corridor is **GRANTED.** The clerk is directed to enter **JUDGMENT DISMISSING** plaintiffs' claims, identified in the Thomas plaintiffs' motion to dismiss, ECF No. 49–1 (attached to this opinion), with prejudice, pursuant to RCFC 54(b), as there is no just reason for delay.

The parties shall file a status report proposing a schedule for further proceedings in this matter, including a schedule for the ap-

praisal process and briefing on valuation method, if any, by **September 28, 2012.**

**IT IS SO ORDERED.**

## EXHIBIT A

(The Thomas Plaintiffs note the following Plaintiffs are listed by their claim number, as appears in The Claims Book Plaintiffs produced to Defendant.)

6. Jeanne L. Ayres
7. Kenneth L. Bacon
10. John L. Barbieri and Kay C. Barbieri
15. Dean W. Berry, Jr.
17. Bolen–Brunson–Bell Lumber Co. Inc.
18. Randell L. Bonds
21. Thomas Branch
22. Shawn T. Brereton and Jennifer L. Brereton
24. Leopold L. Brown and W.A. Newsom, Sr.
25. Neville Brown
27. Charles Buring
28. Sarah Virginia Burks
29. Bryan Capooth
35. Richard A. Corbett
36. CT Rowland Properties, LLC
37. Colleen K. Daut
38. Jack V. Delany
41. D. Lee Dunn
42. Belinda L. Durham
45. Lloyd A. Fletchall and Clara J. Fletchall
46. Scott A. Forman
48. Dale Graham
50. Jimmy Gray and Joyce Burks
52. Anna Hamra and Michael L. Hansen
53. Amy R. Harden and Kyle I. Cannon
55. Kenny F. Hays and Amelia A. Hays
56. Nancy B. Hayslip
58. Julian Hirsch and Celia H. Hirsch
60. Reba R. Holley
62. Mark Hutton
64. Cheree Jaa
65. Larry M. Jackson and Elizabeth D. Preston
67. Morris Jones and Mamie Jones
69. Barry L. Joyce
72. Curtis G. Kimball
79. James Bond Lux and Nita G. Louise
82. Jeffrey A. Mayhew
83. Eric McNeily
87. Richard L. Metts and Debbie A. Metts
89. Timothy A. Meyer
90. William P. Middleton, Jr.
92. Lela D. Morrow
93. Ruby D. Myers and Marie H. Jowers
94. Carolyn W. Mynatt, f/k/a Carolyn Warren Velte
95. William R. Nash and Nancy B. Nash
98. Cristino Palacios and Ruby Palacios
99. Shirley A. Patti
100. John C. Pekar, Jr.
104. Lee E. Porter
105. Joe Anna Powell
106. Mary Suzanne Ray
107. Milton C. Ray
111. William A. Riley and Linda G. Riley
115. Susan Ruch
120. David N. Scully
122. Sarah Seymour
125. Katherine F. Skefos
128. Jeremy Street
130. Jerry L. Tatum and Cynthia B. Tatum
131. Larry Taylor
137. Issac Varon, Jr.
138. Leuthsamone Vichitvongsa
140. James T. Walton, Sr.
145. Herman Whitten
146. Ashley G. Wiles, Jr.
147. Dana Wilkerson–Giel
149. Terry L. Williams